Argued and submitted December 5, 1997, vacated and remanded; appeal stayed for
60 days April 1, 1998

# LAMONTS APPAREL, INC.,
## a Delaware corporation,
### *Appellant,*

*v.*

# SI-LLOYD ASSOCIATES,
## a limited partnership,
### *Respondent.*

## (9411-07588; CA A91907)

956 P2d 1024

Albert J. Bannon argued the cause for appellant. With him on the briefs were Patty Rissberger and Farleigh, Wada & Witt, P.C.

Barnes H. Ellis argued the cause for respondent. With him on the brief were Charles F. Adams, Katherine A. McDowell and Stoel Rives LLP.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

■ The jury returned a verdict in favor of plaintiff in this case concerning the parties' rights under a commercial lease. The court thereafter granted defendant's motion for judgment notwithstanding the verdict, and plaintiff appeals. We are unable to decide the merits of the appeal at this time, because we do not know whether defendant filed the motion for judgment notwithstanding the verdict within 10 days after the entry of judgment, as ORCP 63 D requires. On its face, the motion was untimely, but the trial court granted defendant's motion under ORCP 71 A to show that defendant filed the motion on time. However, because the judge who made that decision should have recused himself before making it, we vacate the decision and remand for reconsideration by a different judge. We stay further proceedings on the appeal until the reconsideration is complete.[1]

The trial court entered judgment on the jury's verdict on November 24, 1995, making December 4 the deadline for a motion for judgment notwithstanding the verdict. The original of the motion in the trial court's file has a certificate of service showing that defendant hand delivered it to plaintiff's attorney on December 4, but the clerk's stamp on the first page of the motion shows that the circuit court clerk received it at 11:08 a.m. on December 5. The parties did not discover this conflict until after the trial court had ruled on the motion and plaintiff had filed its notice of appeal.[2] On the discovery, defendant moved under ORCP 71 A to correct the filing date, asserting that the stamp was a clerical mistake and that the motion was in fact filed either shortly before or exactly at 5:00 p.m. on December 4.[3] The parties submitted

---

[1] The time for defendant to appeal from the original judgment passed well before the trial court ruled on the motion for judgment notwithstanding the verdict. Thus, if that motion was untimely, the original judgment is in effect and is not reviewable on appeal. If the motion was timely, the trial court ruled, and plaintiff appealed, within the proper times. In the first case, we would reverse and remand for reinstatement of the original judgment; in the second, we would decide the merits of the appeal.

[2] Senior Judge Deiz, who had presided at the trial, was unable to rule on the motion for judgment notwithstanding the verdict because of illness. Judge Robinson replaced her for that purpose and continued with the case thereafter.

[3] ORCP 71 B(2) provides:

affidavits on the issue, and Judge Robinson held an evidentiary hearing on December 3, 1996. At the close of the hearing, he indicated that he would rule by a letter opinion.

After the hearing, but before ruling on the motion, Judge Robinson twice visited the clerk's office and discussed a number of matters with Steve Rose, Court Operations Supervisor. Rose had testified at the hearing, and the things that the judge discussed with him included some that arose out of what he had learned at the hearing. Those discussions included whether the file stamp on the motion was irregular, the synchronization of the clocks in the clerk's office, and the procedures for receiving nonfee filings near the end of the business day; they also involved general office operations. The specific matters were relevant to the issues involved in the ORCP 71 A motion to correct. During the first conversation, Rose and one of his assistants showed the judge two other documents with similar time and date stamps to that on the motion for judgment notwithstanding the verdict.

When plaintiff learned of the judge's meetings with Rose, it filed a motion that he recuse himself from further proceedings in the case. At the hearing on that motion the judge stated that, before he met with Rose, he had already decided to give Rose's testimony no weight, because Rose had not been working in the relevant part of the clerk's office at the time in question and thus could not testify concerning the procedures that were in effect when defendant filed the motion. He explained that he met with Rose because he was concerned, based on evidence at the hearing, that the clerk's procedures might not comply with the civil rules and, thus, might lead to problems in the future. He also said that, because the evidence at the hearing failed to explain why the date stamp on the motion was partially upside down, he was concerned that someone in the clerk's office might have been attempting to cover up a mistake. He then denied the motion

---

"A motion under sections A or B may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court. The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order in the appellate court within seven days of the date of the trial court order. Any necessary modification of the appeal required by the court order shall be pursuant to rule of the appellate court."

that he recuse himself, stating that he had decided how he would rule before he met with Rose and that his conversations dealt with general procedures, not the facts of this case. Shortly afterwards, he granted the motion to correct the record to show that defendant filed its motion for judgment notwithstanding the verdict on December 4, 1995, which would make the motion timely.

On appeal, plaintiff argues that Judge Robinson erred by failing to recuse himself and that his ruling on the motion to correct the record is therefore invalid. It relies on cases that hold that a judge should not conduct an investigation outside the record or speak with witnesses on the subject of a proceeding, *see In re Jordan*, 290 Or 303, 325, 622 P2d 297 (1981); *see also State v. Barker*, 227 Neb 842, 847-48, 420 NW2d 695 (1988), and on ethical rules that require disqualification when a judge has personal knowledge of disputed evidentiary facts. *Code of Judicial Conduct*, JR 2-106(A)(1). Defendant responds that the motion to recuse was untimely, that this court is without jurisdiction to consider ethical violations, and that the judge acted within his discretion in denying the motion.

We first consider whether Judge Robinson acted within his discretion in denying the motion to recuse.[4] Defendant argues that he did, because he gave no weight to Rose's testimony and because his conversations with Rose related only to problems that might arise in the future from the procedures that the clerk's office was following. Implicit in defendant's argument is that the discussions with Rose did not affect the ruling on the motion to correct the record. The problem is that the statements that the judge made to explain why he denied the motion to recuse, which are the foundation for defendant's argument, are not evidence. The judge did not purport to testify as a witness when he made those statements, and OEC 605 would have disqualified him from doing so. Rose's affidavit, therefore, is the only available source for determining the nature and substance of the conversations.

---

[4] Defendant also argues that we must affirm the ruling on the motion to recuse if there is any evidence to support it. That argument is based on cases under ORS 14.250 to ORS 14.270, which, as we discuss below, do not apply to this motion.

The information that Rose said that he discussed with the judge is not limited to general problems with the clerk's procedures. According to Rose, they specifically discussed the nature of the file stamp on the original motion, the procedures for late afternoon filings, and other things that were relevant to when defendant actually filed the motion for judgment notwithstanding the verdict. As a result of those discussions, the judge was disqualified from ruling on the motion to correct the record.

In *Hallett v. Hallett*, 153 Or 63, 55 P2d 1143 (1936), the Supreme Court reversed a child custody decision that the trial court based, in part, on evidence that it learned during its own investigation and that was not in the record. In *Trice v. Baldwin*, 140 Or App 300, 915 P2d 456 (1996), the judge in a criminal bench trial talked privately with a witness. After examining cases involving *ex parte* contacts both with judges and with jurors, we concluded that the contact was improper and that, if it involved extrinsic evidence and occurred before the finding of guilt, the state had the burden of proving it harmless beyond a reasonable doubt. 140 Or App at 306.[5]

Other jurisdictions have dealt with this situation in ways that are consistent with these Oregon cases. In *Pua v. Hilo Tribune-Herald*, 31 Haw 65 (1929), the judge, after the jury deadlocked in a defamation action, conducted what he called "a little investigation for myself on my own behalf" by talking with one of the jurors while considering a motion for change of venue for the retrial. 31 Haw at 68. He used the information that he gained to decide the motion. The appellate court held that that was error. "Knowledge possessed by the judge alone cannot be permitted to influence him in his judicial decisions." 31 Haw at 69. In *Patanyi v. Davis*, 336 Pa 476, 9 A2d 430 (1939), the trial court granted a new trial to the plaintiff, based in part on a post-trial examination by a physician named by the court. The Pennsylvania Supreme

---

[5] In *In re Jordan*, 290 Or 303, 324-25, 622 P2d 297 (1981), the Supreme Court stated that it was obvious that the judge should not have talked privately in his chambers with a witness in a preliminary hearing. That case involved the application of the judicial disciplinary rules. Because its holding simply reinforces the conclusion that we reach otherwise, we do not need to decide the extent to which the court intended its statement to describe a duty that a judge would have without regard to the rules.

Court held that it was error to consider the report, because the physician was not sworn and the defendants had no opportunity to cross-examine him. In *Salt Lake City v. United Park City Mines Company*, 28 Utah 2d 409, 503 P2d 850 (1972), the judge in a court trial used a book not in evidence to help prepare nine exhibits and had his college student son use a university computer to make a crucial calculation. He based his decision in favor of the defendant in large part on those things. The Utah Supreme Court held that the judge erred by going outside the evidence to make a finding. Because the plaintiff might well be apprehensive if the appellate court simply remanded for further consideration, it reversed the decision and remanded for a new trial.

In *Hallett* and the cases from other jurisdictions, it was clear that the extra-judicial information affected the court's decision. In this case, Judge Robinson stated that the information did not influence his decision on the motion to correct the record. That distinction does not, however, change the effect of the judge's actions on his ability to rule on the motion. On this point we agree with the reasoning of the Nebraska Supreme Court in *Barker*, a case on which plaintiff relies.

After the verdict in *Barker*, the judge met with the victim's family, which was upset that the jury had convicted the defendant of manslaughter rather than murder. He thereafter gave the defendant the maximum permissible sentence. The appellate court first noted that the case involved an *ex parte* communication that the judge invited, at a time when sentencing had become the focal point of the proceeding. It then stated that an *ex parte* communication, as an extrajudicial source of information, reasonably raised a question about the judge's impartiality in disposing of questions germane to the subject of the communication. For that reason, it held that "a judge, who initiates or invites and receives an *ex parte* communication concerning a pending or impending proceeding, *must recuse himself or herself from the proceedings when a litigant requests such recusal.*" 227 Neb at 847 (emphasis supplied). It was not necessary to prove actual prejudice.

The Nebraska court based its decision on Neb Evid R 605, which is identical to both FRE 605 and OEC 605: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." It relied on cases and commentaries under the federal rule that indicated that a judge who had personal knowledge of relevant facts might be acting as a witness, and thus might violate the rule, even if the judge did not formally take the witness stand. 227 Neb at 848-53. In *Barker*, whether the meeting with the victim's family influenced the judge's sentencing decision was the crucial issue on appeal. The judge's testimony on that point was highly important, if not essential, to resolving the issue. "[W]ho other than the judge could better testify about the judge's attitude or mental disposition toward sentencing in this case?" *Id.* at 853. It was not possible to resolve that issue without the judge becoming both witness and judge "and perhaps quite naturally [being] required to assume the ultimate role of advocate in defense of his own impartiality which had been brought into question." *Id.* Requiring a litigant to prove prejudice through the testimony of one who is disqualified from testifying would impose an impossible standard. The court therefore vacated the sentence and remanded for a new sentencing hearing before a different judge.

■   The analysis in *Barker* applies directly to this case. The essential issue is whether Judge Robinson's meetings with Rose, which the judge initiated, affected his decision on the motion to correct the record. The judge stated that they did not, but that statement is not evidence. For it to be evidence, and in order for plaintiff to challenge it, the judge would have to testify, and plaintiff would have to be able to question him about all of the factors that went into his decision. Even if such testimony and questioning were otherwise proper, OEC 605 absolutely forbids them. Both plaintiff and the judge, thus, are in impossible positions, the judge because he cannot do more than simply state that his contacts did not affect his decision, plaintiff because it cannot effectively challenge those statements. The only appropriate response to the situation was for Judge Robinson to recuse himself and to allow a different judge, who had no outside contacts on the

subject of the motion to correct the record, to decide the motion. His failure to do so was error.[6]

■ Defendant's procedural arguments do not require extended discussion. The statutes governing procedures to disqualify a judge, ORS 14.250 to ORS 14.270, apply to disqualification based on the situation that exists when the judge is first assigned to a case and require a showing only that the party seeking disqualification has a good faith belief that it would not receive a fair and impartial trial. It is not necessary to allege specific grounds for that belief. ORS 14.260(1). Those statutes are irrelevant to whether later events require recusal as a matter of law. If they were not, it would be impossible to move for recusal after the statutory time had passed, no matter what happened in the interim. *See State v. Garza*, 125 Or App 385, 388-89, 865 P2d 463 (1993), *rev den* 319 Or 81 (1994) (to ensure due process, actual or apparent bias results in disqualification "even when the statutory requirements for recusal have not been, or, as here, could not have been followed").

Finally, we are not usurping the Supreme Court's jurisdiction over judicial discipline. In the context of attorney discipline, the Supreme Court has noted that, although only it may enforce the discipline rules, other courts in nondisciplinary contexts may enforce duties of attorneys that arise independently of the disciplinary rules, even if the rules incorporate those duties. *See Kidney Association of Oregon v. Ferguson*, 315 Or 135, 142-43, 843 P2d 442 (1992). Although plaintiff cited several judicial disciplinary rules in its briefs, we base our decision that Judge Robinson should have recused himself on considerations that arise independently of those rules. We are not enforcing judicial discipline but determining the correctness of a ruling that the trial court made in a case that is properly before us.

---

[6] In *Trice v. Baldwin*, 140 Or App 300, 915 P2d 456 (1996), a post-conviction case, we held that an *ex parte* contact with the trial judge in the original criminal case created a presumption of prejudice, not that it disqualified the judge. The parties did not learn about the *ex parte* contact until long after the trial, so there was no opportunity to move that the trial judge recuse himself. The trial judge testified in the post-conviction case.

Order granting motion to correct record vacated and remanded for new decision by different judge specifying date on which motion for JNOV was filed; appeal stayed for 60 days pending that decision.