Argued and submitted February 21, 2001, remanded for resentencing;
otherwise affirmed April 10, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT LEE RIGGINS,
*Appellant.*

## 98-08-9012C2; A104512

44 P3d 615

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Michael C. Livingston, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Defendant appeals his convictions for burglary and theft. At sentencing, he challenged the use of two juvenile adjudications in determining his criminal history score, arguing that those adjudications were constitutionally defective because they were uncounseled. The sentencing court rejected defendant's challenge and calculated defendant's criminal history score using the juvenile adjudications. Defendant challenges that ruling on appeal. We agree that use of the juvenile adjudications was error, and we remand for resentencing.

Defendant's two prior juvenile adjudications arose from a single juvenile proceeding. In objecting to their use at sentencing, defendant argued that he was not represented by counsel at the juvenile proceeding, that he did not waive counsel, and that the adjudications therefore were constitutionally defective. The trial court took judicial notice of the entire juvenile file, and that file was made part of the record in this case. In colloquy with the court, defense counsel acknowledged that defendant was unrepresented because his father, who had the ability to hire an attorney, was unwilling to do so. To clarify the facts in that regard, defense counsel called defendant to testify as to his understanding of why he did not have a lawyer during the juvenile proceeding. Defendant explained that, when he made an initial appearance on the juvenile charges, his father was with him. Defendant was "pretty sure" that his parents did not request appointment of an attorney. Defendant wanted an attorney to represent him, however, and, after his initial appearance, he asked his father to hire one. His father refused. On cross-examination, defendant acknowledged that he recalled being told that he did not qualify for a court-appointed attorney. Neither counsel asked defendant anything further.

In argument to the trial court, defendant maintained that his uncounseled adjudications were unconstitutional because he had not waived counsel. As the argument progressed, the focus became whether defendant personally waived his right to representation or whether his father could do so by his refusal to hire an attorney for defendant.

Defense counsel urged: "[W]e don't allow other people to waive [due process rights to an attorney] for us and in this particular case, that's what happened. It's a very unique situation." The prosecutor took the position that waiver was not the correct way to frame the issue. Rather, in the prosecutor's view, the issue was one of entitlement to court-appointed counsel:

> "The only thing I would add is I don't think a waiver would be accurate. I think it's not qualifi[ed] based on parental income and then a choice by the parent in essence not to hire an attorney. I don't think there's anybody who ever said [']we waive a court appointed attorney.['] It was that they failed to qualify and then they simply chose not to go out and hire an attorney."

The sentencing court agreed with the prosecutor's view of the issue:

> "The issue really comes down to this sort of a bottom line. If in fact a family household has sufficient assets to be able to hire counsel for one of its members including a juvenile, but in this particular case the assets are controlled by the adults as opposed to the juvenile, [does] that somehow cause some sort of a constitutional dilemma or problem that would in essence nullify a juvenile adjudication arising out of that particular circumstance."

After so observing, the sentencing court rejected defendant's challenge and calculated defendant's criminal history score using the juvenile adjudications.

On appeal, although their arguments are further developed, the parties essentially renew the positions that they took below. Defendant argues that he was not represented by counsel, that he did not waive counsel, and that his father's refusal to hire an attorney for him is not a basis on which to find a valid waiver by defendant, because any such waiver must be made by him personally. In that regard, defendant relies on precedent from this court holding that, when a defendant challenges the use of a prior uncounseled conviction or adjudication to enhance a sentence, the defendant must make a *prima facie* showing that he or she was not represented at that time. *State v. Holliday*, 110 Or App 426, 429, 824 P2d 1148, *rev den* 313 Or 211 (1992). If that showing

is made, the burden shifts to the state to show either that defendant was, in fact, represented or that he validly waived counsel. *Id.* Defendant contends that the state failed to carry that burden.

The state responds, much as it did below, by arguing that the issue, accurately viewed, is one of entitlement to court-appointed counsel. According to the state, defendant acknowledged in his testimony that he did not ask the court to appoint counsel for him. Relying on ORS 419C.200(1),[1] the state argues that a juvenile court is under no obligation to appoint counsel for an unrepresented youth unless the youth requests the court to do so. In the state's view, defendant's failure to request counsel ends the inquiry and no waiver need be shown.[2]

We begin by outlining the legal principles regarding a youth's right to counsel in a delinquency proceeding, which are straightforward. Under the federal Due Process Clause, a youth in a juvenile delinquency proceeding has a settled right to counsel if the adjudication may result in a loss of liberty:

"A proceeding where the issue is whether the [youth] will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The [youth] requires the guiding hand of counsel at every step in the proceedings against him."

---

[1] ORS 419C.200(1) provides:

"If the youth, the parent or guardian *requests* counsel for the youth but is without sufficient financial means to employ suitable counsel possessing skills and experience commensurate with the nature of the petition and the complexity of the case, the court may appoint suitable counsel to represent the youth. *Whenever requested to do so*, the court shall appoint counsel to represent the youth in every case filed pursuant to ORS 419C.005 in which the youth would be entitled to court-appointed counsel if the youth were an adult charged with the same offense."

(Emphasis added.)

[2] The state confirmed that understanding of its position at oral argument. When asked if its position was that "an issue of waiver presumes, or assumes, that there was a right to appointed counsel in the first place, and what is really at issue here is whether there was a right to counsel in the first place," counsel responded, "Yes. Exactly."

*In re Gault*, 387 US 1, 36, 87 S Ct 1428, 18 L Ed 2d 527 (1967) (internal quotation marks omitted). To secure that right, "the [youth] and his parents must be notified of the [youth's] right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the [youth]." *Id.* at 41. Before a juvenile adjudication may go forward without representation by counsel, the right to counsel must be validly waived. Mere knowledge by the youth and the youth's parents that they can hire an attorney and appear at the proceeding with representation is not enough for an effective waiver of the right to representation. *Id.* at 42. Rather, the youth and the youth's parents have "a right expressly to be advised that they might retain counsel and to be confronted with the need for specific consideration of whether they * * * choose to waive that right." *Id.* Thus, a waiver of a youth's right to counsel must be no less voluntary, knowing, and intelligent than a waiver by an adult facing a criminal prosecution. *See Gault*, 387 US at 42 (citing *Carnley v. Cochran*, 369 US 506, 82 S Ct 884, 8 L Ed 2d 70 (1962)).[3]

■     On the basis of those principles, we reject the state's position that an issue of waiver arises only in those instances where a youth is entitled to court-appointed counsel and the youth has (or his parents have) taken the steps necessary to trigger that right, such as requesting appointed counsel, filing any necessary documentation of financial status, and so on. It is not the right to *court-appointed* counsel that must be validly waived, it is the right to *counsel,* period. The point of obtaining a valid waiver is to ensure that a youth and his parents in a juvenile case—just as would be true of an adult in a criminal case—go forward not only with the knowledge and awareness of the right to be represented by retained or court-appointed counsel but also with an appreciation of the risks

---

[3] *See also United States v. Slipka*, 735 F2d 1064, 1066 (8th Cir 1984) ("*Gault* essentially extends the protections of *Gideon v. Wainright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963), to juveniles."); *In re Appeal No. 544*, 25 Md Ct Spec App 26, 39-40, 332 A2d 680 (1975) ("[w]e believe no less is required for a knowing and intelligent waiver of counsel in a delinquency proceeding involving children than is required in a criminal proceeding involving adults. To have a less strict standard for an effective waiver of counsel by a child than by an adult would be completely incongruous."); *In re Fierro*, 476 SW2d 870, 871 (Tex Civ App 1972) (noting that the standard, whereby the record must show that an accused was offered counsel but intelligently and understandingly rejected the offer, is applicable to juveniles at the adjudication stage).

of self-representation. That interest is as significant for someone with the means to retain counsel as for someone who lacks those means. Thus, as *In re Gault* itself establishes, waiver principles apply with equal force to an indigent person as to a person with the financial means to retain an attorney.

■ We therefore turn to whether the parties carried their respective burdens in this case. A defendant in a criminal case is entitled to challenge the use of a prior uncounseled juvenile adjudication as well as the use of a prior uncounseled adult conviction. *State v. Stewart/Billings*, 321 Or 1, 7, 892 P2d 1013 (1995) ("it is clear that, in making determinations about any disputed part of a defendant's criminal history pursuant to ORS 137.079(5), the sentencing court must determine whether the use of a prior juvenile adjudication would comply with the requirements of law, including constitutional requirements"). In *Holliday*, we described the parties' respective burdens in that regard as follows:

> "A defendant who challenges the constitutionality of a prior conviction on [the ground that it was uncounseled] bears the burden of demonstrating *prima facie* that the conviction was uncounseled. If that is done, the burden is then on the state to demonstrate either that the defendant was, in fact, represented or that he had waived counsel."

110 Or App at 428 (citing *State v. Annino*, 46 Or App 743, 613 P2d 84, *rev den* 289 Or 588 (1980)).

■ A defendant meets his or her burden of demonstrating that the conviction was uncounseled if the record of the adjudication either affirmatively demonstrates that defendant was not represented or the record is "silent" on the point. *See State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981); *State v. Manfredonia*, 105 Or App 537, 540, 805 P2d 738 (1991). If the state seeks to meet its responsive burden by showing that a youth in a juvenile case waived counsel, it must demonstrate that the youth and the youth's parents were aware of the youth's right to representation by appointed or retained counsel and that they intentionally relinquished that right and proceeded without counsel. *Gault*, 387 US at 41-42; *State v. Meyrick*, 313 Or 125, 133, 831

P2d 666 (1992) (discussing waiver standard in the context of adult criminal prosecution). To establish an intentional relinquishment of the right, the state must show that the youth and his parents, either through colloquy on the record with the court or perhaps through a signed written waiver, understood the risks of self-representation. *See Meyrick*, 313 Or 305 at 136-38 (discussing standard for intentional relinquishment in context of adult criminal prosecution). *See generally State v. Howard*, 172 Or App 546, 19 P3d 369, *rev den* 332 Or 305 (2001) (discussing standards for valid waiver in context of purported oral waiver); *State v. Jackson*, 172 Or App 414, 19 P3d 925 (2001) (same in context of purported written waiver).

■ Here, defendant readily met his burden of making a *prima facie* showing that he was unrepresented. The juvenile record does not reflect representation by counsel at any stage of the juvenile proceedings; rather, the relevant orders show that, throughout the proceedings, only defendant and his father appeared. Moreover, the state effectively has conceded throughout this case that defendant was not represented by counsel during the juvenile adjudications. The only remaining question, then, is whether the state carried its burden to demonstrate a valid waiver of that right.

As described earlier, the state does not argue that it demonstrated a waiver; rather, it argues that waiver is the wrong question to ask, a position that, as we have discussed, we reject. We have, however, examined the record in full, which consists of the evidentiary record made below as well as the record of the juvenile proceedings. Put simply, nothing on this record provides a basis to find a valid waiver either by defendant or by his parents, or by both. There is no written waiver in the juvenile court record.[4] Nor is there any record of

---

[4] We note that the juvenile file contains a written *Miranda* waiver that youth's father signed, indicating that he knew that his son was entitled to counsel when questioned in connection with the acts that formed the basis for the petition. The trial court noted the existence of that form but, correctly, did not rely on it as a basis for finding a waiver of the right to representation at the actual adjudication of the petition. A *Miranda* waiver clearly would not suffice for such a purpose. *See generally Jackson*, 172 Or App at 424 (holding that written waivers referring only in general terms to potential advantages of representation by counsel and potential disadvantages of self-representation did not sufficiently demonstrate awareness of the dangers of self-representation).

a colloquy between the juvenile court and defendant or his parents in which the dangers of proceeding without counsel were discussed. The most that can be said on this record is that defendant and his father were aware that they could retain counsel and believed that they were not entitled to appointed counsel. That may be enough to conclude that defendant and his father acted with some knowledge of the right to representation. But it is not enough to establish that either defendant or his father acted with any awareness, let alone a sufficient awareness, of the pitfalls of proceeding without representation.[5]

For those reasons, the state did not carry its burden to demonstrate a valid waiver. To be sure, the state in this case has proceeded on the assumption that no waiver need be shown. But in that regard, the state was wrong. Because the burden of demonstrating a valid waiver was the state's to bear, the silence of the record on that point falls to the detriment of the state's position. Consequently, the trial court erred in using defendant's uncounseled convictions in setting defendant's criminal history score.

Remanded for resentencing; otherwise affirmed.

---

[5] Courts in other jurisdictions have concluded that a youth who desires counsel and whose parents refuse to hire counsel despite their ability to do so is constitutionally entitled to court-appointed counsel. *See, e.g., In the Interest of L.G.T.*, 216 So 2d 54 (Fla Dist Ct App 1968) (a juvenile who can not afford an attorney may not be denied court-appointed counsel based on parents' ability to pay for counsel); *State ex rel Gordon v. Copeland*, 803 SW2d 153 (Mo Ct App 1991) (same); *Opinion of the Justices*, 121 NH 531, 431 A2d 144 (1981) (same); *In re J.B.*, 157 Vt 668, 603 A2d 368 (1991) (same). On this record, however, we do not need to reach that issue because *no* valid waiver by youth, his father, or both can be found on this record. We thus do not resolve the debate between the parties as to whether youth had a right to court-appointed counsel in the circumstance or who, as between a youth who desires representation and his parents who do not, is entitled to waive the youth's right to representation.