Argued and submitted April 26, affirmed September 25, 2002

# STATE OF OREGON,
### *Respondent,*

*v.*

# BILLY MARK McREYNOLDS,
### *Appellant.*

## 229921391; A111261

54 P3d 124

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Michael J. Slauson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

Haselton, P. J., concurring.

## LINDER, J.

The issue in this criminal appeal is whether the trial court erred by failing to inquire into the merits of defendant's request for substitute counsel. We conclude that, on the facts before us, the trial judge had no duty to make such an inquiry. We therefore affirm.

At the end of the first day of defendant's jury trial on an assault charge, defendant wrote the trial judge a letter complaining in some detail about his attorney's representation and asking for a "new att[orney], and a new trial with a new jury." Defendant had the letter hand-delivered to the judge in an envelope that provided no indication of the letter's substance. Defendant wrote a similar letter the next day, again complaining in some detail about his attorney's representation. In it, defendant acknowledged that court staff had advised him that he could not confer privately with the judge and that he should confer with his attorney. Nevertheless, as the substance of the letter reflects, defendant began writing it during the second day of trial, continued it while the jury was deliberating, and finished the letter after the jury returned its verdict. After writing the letter, defendant folded it inside another sheet of paper, which served as a makeshift envelope, and had it delivered to the judge. Again, the envelope did not reveal the letter's substance.

At sentencing, the judge explained to counsel for defendant and for the state that he had received the letters but did not read them until after the trial was over:

"[Court]: You know, there is one other thing I need to mention here, too. I got a letter, actually several handwritten letters or notes from the defendant critical of the defense he received in the case.

"And I guess the question that I ought to ask at this point is, Mr. McReynolds, are you prepared to proceed to resolution of this case and sentencing with Mr. Hansen as your lawyer?

"[Defendant]: Yes. I don't have—

"[Defendant's attorney]: Stand up when you are talking to the judge.

"[Defendant]: I don't have any other counsel. I asked for other counsel and I don't know where else to go. I can't afford another attorney.

"[Court]: Well he is court-appointed.

"[Defendant]: Right. I feel the trial was handled wrong, your Honor, as I stated in the notes. I asked to speak with you on that date and I was deferred [*sic*] to him, and he said he would handle it. It didn't happen.

"[Court]: Well, it is inappropriate for me to be getting *ex parte* communications directly from a defendant in a criminal case.

"[Defendant]: Right.

"[Court]: So I chose to wait until the case was resolved to even look at that material because I didn't think it was appropriate."

On appeal, defendant argues that his letters requesting a new attorney required the trial judge to inquire into the merits of that request as soon as the trial judge received the letters. In response, the state argues that, in this case, unlike those on which defendant relies, the trial judge did not have actual knowledge of defendant's request because he did not open the letters. According to the state, "no legal authority dictates that a trial judge must open and read his or her mail" and, consequently, the trial court did not err.[1]

As defendant argues, the principle is well settled that, when presented with a defendant's request for substitution of court-appointed counsel, a trial court must assess the facts and determine whether the defendant's complaint

---

[1] The state's first and primary argument was that the record is inadequate for us to review defendant's assignment of error because the letters are not in the record and, consequently, there is no evidence as to their actual content and the timing of their receipt. After oral argument, we determined that the letters in fact are in the record; they simply were not transmitted to our court by the circuit court. The common procedure in the trial courts in this state is to place pleadings in one file and correspondence in another. Both files are components of the court's official file, but trial courts customarily transmit only the pleading file to the appellate courts. On our own motion, we supplemented the appellate record with the correspondence portion of the file. *See* ORAP 3.05. The actual letters and their envelopes are a part of that file and, therefore, are a matter of record. In light of that development, the state effectively has withdrawn its argument that defendant's claim of error cannot be reviewed on this record.

provides a legitimate ground for such a substitution. *See State v. Langley*, 314 Or 247, 257, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993); *see also State v. Grcich*, 148 Or App 337, 342, 939 P2d 649 (1997). As that statement of the principle reveals, however, a trial court's duty of inquiry arises only when the defendant properly *presents* a request for substitute counsel to the trial court. The trial court has no duty to inquire *sua sponte* into the matter. *State v. Dell*, 156 Or App 184, 189, 967 P2d 507, *rev den*, 328 Or 194 (1998). Rather, the request must be affirmatively presented by the defendant or on the defendant's behalf. *See State v. Ben*, 97 Or App 640, 647, 777 P2d 1001 (1989), *rev'd on other grounds*, 310 Or 309, 798 P2d 650 (1990) (no error where request to withdraw was made by defense counsel and the defendant did not ask for substitute counsel). Thus, the key issue here is whether defendant's letters were an adequate means for defendant to present his request to the trial court.[2]

Defendant's argument that the letters triggered a duty of inquiry on the court's part rests on the proposition that a judge must immediately open and read mail that he or she receives and that, therefore, a judge should be held to have constructive notice of the contents of all mail. *See generally Forest Grove Brick v. Strickland*, 277 Or 81, 86, 559 P2d 502 (1977) (charging an individual with constructive knowledge in circumstances where there is a duty of undertaking "a reasonably diligent inquiry" that would provide actual knowledge). Defendant does not identify a legal source of a duty on a trial court's part to open mail on any particular schedule. Nor are we aware of one.[3]

---

[2] Because of the grounds of our disposition, we do not consider the timeliness of defendant's request for substitution, which is an issue that the parties did not address because they had not reviewed the letters. The timeliness of a motion for substitution of counsel is a significant factor in a court's exercise of discretion in ruling on the motion. *See Ben*, 97 Or App at 647; *State v. Wilson*, 69 Or App 569, 572, 687 P2d 800 (1984), *rev den*, 298 Or 553 (1985). That fact, in turn, might bear on whether the motion gave rise to a duty to inquire or whether the failure to inquire, even if a duty to do so arose, could be considered prejudicial. *See generally Schell v. Witek*, 218 F3d 1017, 1025-26 (9th Cir 2000) (concluding that trial court's failure to inquire into motion for substitute counsel cannot be deemed prejudicial *per se* unless, as a result, the defendant is forced to proceed without any counsel).

[3] Oregon Code of Judicial Conduct Judicial Rule 2-101 provides that a judge's "performance of judicial duties shall take precedence over all other activities, and a

■ But in all events, the more precise issue framed by the facts of this case is whether a trial judge has a duty to read a letter of uncertain content sent by a party in the middle of a trial over which the judge is presiding. Such a letter potentially brings Oregon Code of Judicial Conduct Judicial Rule (JR) 2-102 into play, which prohibits a judge from communicating with "a lawyer or party about any matter in an adversary proceeding outside the course of the proceeding, except with the consent of the parties or as expressly authorized by law or permitted by [the rule itself]." JR 2-102(B). The exceptions permitted by the rule pertain only to communications that "do not deal with substantive matters or issues on the merits." JR 2-102(C). A letter of unknown content, directed to a trial judge by a party to a case pending before that judge, poses an obvious risk of running afoul of that prohibition, depending on the letter's actual substance. The problem is compounded when, as in this case, the judge receives such a letter in the middle of the trial. A judge's exposure at that point to an *ex parte* contact, were such a letter to contain substantial information about issues in the case, potentially could require the judge to recuse himself or herself; that, in turn, would necessitate a mistrial. The judge's failure to take such an action could then infect the case with reversible error. *See Lamonts Apparel, Inc. v. SI-Lloyd Associates*, 153 Or App 227, 232-36, 956 P2d 1024 (1998) (discussing cases; reversing and remanding for new trial before a different judge due to trial judge's failure to recuse himself after *ex parte* contact). The potential for delay and damage to the orderly administration of the court system generally, and to the efficient handling of individual cases in particular, is patent.[4]

---

judge shall not neglect the business of the court." That provision, however, at most states a general objective of attending to the "business of the court." The provision does not dictate any particular manner or method by which a judge is to accomplish the myriad tasks encompassed within the "business of the court." In other words, other than to identify the worthy objective of not neglecting the business of the court, the specific tasks to be performed and the manner in which they are to be accomplished is a matter for individual judgment.

[4] The situation, moreover, is ripe with the potential for manipulation by a criminal defendant seeking to delay or otherwise hamper the progress of a trial. To be sure, nothing in this record suggests any such motive on defendant's part. But we have the benefit of hindsight. A trial judge confronted with a letter from a criminal defendant midway through the defendant's jury trial does not have the same benefit and, as a result, is wise to be particularly cautious.

In light of JR 2-102, a judge's identifiable obligation on receipt of a letter from a party in a pending case is to avoid a potential *ex parte* communication. The course of action that the trial judge followed in this case achieved that end. The trial judge kept the letters sealed until the jury returned its verdict. Sometime later, before sentencing, the trial judge opened and read the letters. At sentencing, the judge made a record as to the letters' contents and asked defendant how he wished to proceed for purposes of sentencing. By handling the matter in that way, the judge avoided the risk of exposure to information that could require him to recuse himself mid-trial, which in turn could have required a new trial. At most, an improper *ex parte* communication after verdict would have required a different judge to handle the sentencing, which would not have entailed the disruption, cost, or delay of a mid-trial recusal.

 Defendant acknowledges the legitimacy of the trial judge's concern with a potentially improper *ex parte* communication. Defendant nevertheless argues that the judge should have handled the matter in some alternative way. As possibilities, defendant suggests that the judge could have "open[ed] the letters in front of the parties to examine the contents" or could have "[read] the letters and suppl[ied] copies to the parties." Such alternatives, however, would not necessarily have spared exposure to information that, due to its substance, might have tainted the proceedings.[5] But even assuming that any of defendant's alternatives, or others that could be fashioned, would be "better" in some sense, the fact remains that no particular response or course of action was legally dictated in this circumstance. Trial judges are vested with particularly broad discretion in the day-to-day management of their courtrooms, where the variety and unpredictability of the circumstances that may be involved make it impossible to devise rules to dictate the specific actions that a trial judge must take. Discretionary judgments of that kind are tested only for whether the action taken or the decision

---

[5] As noted in *United States v. Welty*, 674 F2d 185, 190 (3d Cir 1982), even when a judge inquires in open court as to the reasons for a criminal defendant's dissatisfaction with his attorney, "the inquiry must be pursued delicately * * * without delving into the merits of the defendant's legal position" or exposing privileged discussions with counsel.

made was within the permissible range of legal choices, not whether the particular choice is the one the appellate court would make. *See Carter v. Moberly*, 263 Or 193, 200-01, 501 P2d 1276 (1972). *See generally Liberty Northwest Ins. Corp. v. Jacobson*, 164 Or App 37, 45, 988 P2d 442 (1999) (discretion "describes the decision-maker's power to choose among several courses of action, any one of which is legally permissible"). The trial judge's decision in this case as to how to handle defendant's mid-trial correspondence was within the permissible range.[6]

The problem for defendant, then, lies in his choice of how to present his request for substitution of court-appointed counsel—*i.e.*, via sealed correspondence directed to the trial judge. The trial judge was not obligated to open those letters immediately on their receipt. Rather, given the procedural posture of the case, among the permissible courses of action available to the trial judge was the one that the trial judge followed, which was to read the letters only after the jury returned its verdict. If defendant wanted to ensure that his request for substitute counsel would trigger a duty of inquiry and a ruling by the trial judge earlier in the proceedings, defendant was required to present that request in open court or through his attorney. Because he did not do so, the trial court did not err.

Affirmed.

**HASELTON, P. J.,** concurring.

I write separately to highlight two considerations, one that is implicit in the majority opinion, and one that is not.

---

[6] Although we review for abuse of discretion the trial court's decision about how to handle potential *ex parte* communications, that does not alter our standard for reviewing the trial court's duty to inquire, once that duty has been triggered by a proper request for substitution. *Grcich*, 148 Or App at 342 (court has "affirmative duty" to consider request for new court-appointed counsel); *State v. Bargas-Perez*, 117 Or App 510, 513, 844 P2d 931 (1992) (same). Similarly, we continue to review the trial court's decision about whether to grant a defendant's motion for substitution of court-appointed counsel for abuse of discretion. *State v. Thompson*, 328 Or 248, 254, 971 P2d 879, *cert den,* 527 US 1042 (1999); *Grcich*, 148 Or App at 342.

*First,* our analysis pertains solely to *mid-trial* communications from represented criminal defendants that present the potential for improper *ex parte* contacts. As the majority explains, *see* 183 Or App at 636-37, there are qualitatively distinct dynamics and concerns that arise in the trial context. We do not address the proper limits of a court's discretion in addressing communications from represented criminal defendants in the pretrial or post-trial settings.

*Second,* I agree that the trial court here acted within the proper limits of its discretion by not opening the letters until after trial. However, with respect, the *better* course would have been for the court, upon receipt of each letter, to have informed the parties in open court of that fact and then to have returned the letter unopened to defendant with the admonition that the court would not consider such communications and that defendant must convey any concerns or complaints through his counsel.