Argued and submitted November 25, 2003, affirmed February 25, 2004

STATE OF OREGON,
*Respondent,*

*v.*

LYLE DEAN CRAIN,
*Appellant.*

0003658CR; A116504

84 P3d 1092

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Ozanne, Executive Director, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals his conviction for first-degree burglary. ORS 164.225. He contends that the trial court erred (1) in failing to treat his attorney's motion to withdraw on the day of trial as defendant's own request for substitute counsel; and (2) by including a previous fourth-degree assault conviction in his criminal history score for purposes of sentencing, because there was no showing that he was represented by counsel or validly waived counsel before entering a guilty plea in that case. We affirm.

The trial court appointed counsel to represent defendant in this case. On the morning of trial, before the jury was impaneled, defendant asked counsel why a particular witness had not been subpoenaed. The following exchange then took place:

"[DEFENDANT] [addressing the court]: How am I going to get the ambulance driver subpoenaed? He doesn't want to.

"* * * * *

"[DEFENDANT]: [My attorney] doesn't want a subpoena on him and I, I need that.

"THE COURT: [Defendant], you need to discuss your case with your attorney.

"[DEFENDANT]: Yes, he doesn't want to do anything I say. He's doing everything that you say.

"[COUNSEL]: Your Honor, at this time I'd move to withdraw as [defendant's] attorney. I believe. . . .

"[DEFENDANT]: That's good. It's about time!

"[COUNSEL]: . . . confidence, relationship has broken down at this time. . . .

"[DEFENDANT]: Yes, because you talk to her and that DA all the time. You tell them what I tell you.

"THE COURT: That motion is denied. We're going to go forward. [Defendant], do you want to go to trial today?

"[DEFENDANT]: Yes, I do."

The case proceeded to trial, and the jury convicted defendant of first-degree burglary.

At sentencing, defendant argued that a 1980 fourth-degree assault conviction entered on the basis of his guilty plea could not be used in calculating his criminal history score in this case. He asserted that there was no record of the proceedings in the 1980 case showing whether he had been represented by counsel or, if not, that he had been offered counsel or had validly waived his right to representation. Defendant testified that he could not remember whether he had been represented by counsel in the 1980 case. He also testified that he could not recall whether he had been advised of his right to counsel or the risks of self-representation or had signed any document stating that he understood those matters.

The state acknowledged that the record of proceedings in the 1980 case apparently had been destroyed. However, the state argued that, because defendant had not shown that he was unrepresented, he had not made a *prima facie* showing that the prior conviction was invalid. The trial court concluded that defendant did not make the *prima facie* showing required by *State v. Riggins*, 180 Or App 525, 528-29, 44 P3d 615 (2002) (stating that, when a defendant challenges the use of a prior uncounseled conviction, he must make a *prima facie* showing that he was not represented before the burden shifts to the state to show either that the defendant did have counsel or validly waived that right). Notwithstanding that ruling in its favor, the state called as a witness at the sentencing hearing the trial judge who had presided over the 1980 case. The judge testified that he could not remember the details of the case but that he generally had engaged in colloquies with unrepresented defendants regarding their right to counsel and the risks of self-representation.

Based on the record at the sentencing hearing, the trial court found that defendant voluntarily had waived his right to counsel in the 1980 case. Accordingly, it included defendant's conviction in that case in the calculation of his criminal history score. The court sentenced defendant to 56 months' imprisonment. This appeal followed.

■    In his first assignment of error, defendant argues that his express approval of his attorney's motion to withdraw amounted to a request for substitute counsel. He contends that the trial court erred by failing to inquire into whether the appointment of substitute counsel was warranted. The state responds that defendant did not request substitute counsel and that the court therefore had no duty to make such an inquiry.

■    The principle is well settled that, when presented with a defendant's request for substitution of court-appointed counsel, a trial court must assess the facts and determine whether the defendant's complaint provides a legitimate ground for such a substitution. *See State v. Langley*, 314 Or 247, 257, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993); *see also State v. McReynolds*, 183 Or App 631, 634-35, 54 P3d 124 (2002). As that statement of the principle reveals, however, a trial court's duty of inquiry arises only when the defendant properly presents a request for substitute counsel to the trial court. *Id.* The trial court has no duty to inquire *sua sponte* into the matter. *State v. Dell*, 156 Or App 184, 189, 967 P2d 507, *rev den*, 328 Or 194 (1998). Rather, the request for substitute counsel must be affirmatively presented by the defendant or on the defendant's behalf. *See State v. Ben*, 97 Or App 640, 647, 777 P2d 1001 (1989), *rev'd on other grounds*, 310 Or 309, 798 P2d 650 (1990) (no error where request to withdraw was made by defense counsel and the defendant did not ask for substitute counsel). The question presented is whether defendant's expression of approval for his counsel's motion to withdraw constituted a request for substitute counsel that triggered the trial court's duty to inquire further.

Defendant relies, in part, on our decision in *State v. Coffey*, 158 Or App 112, 116, 972 P2d 1219 (1999), *overruled in part on other grounds by State v. Smith*, 190 Or App 576, 580-81, 80 P3d 145 (2003), in which we rejected the state's argument that a request for substitute counsel must be made in a formal motion. The defendant in that case had requested substitute counsel in a letter to the court rather than through his attorney. *Id.* We concluded that the letter, which contained an "explicit request for the appointment of substituted

counsel," was sufficient to trigger the court's duty to inquire. *Id.* Unlike this case, *Coffey* addressed the adequacy of the *procedure* used to request substitute counsel, not the *substance* of the request. All of the other cases on which defendant relies are similarly distinguishable; in each of them, the defendant explicitly requested a new attorney. *See, e.g., State v. Grcich,* 148 Or App 337, 340, 939 P2d 649 (1997), *overruled in part on other grounds by Smith,* 190 Or App at 580-81; *State v. Davis,* 110 Or App 358, 360, 822 P2d 736 (1991); *State v. Heaps,* 87 Or App 489, 494, 742 P2d 1188 (1987), *overruled in part on other grounds by Smith,* 190 Or App at 580-81.

In *Ben,* we held that the trial court did not err by failing to provide substitute counsel after the defendant's attorney orally moved to withdraw. Defendant attempts to distinguish *Ben* on the ground that the defendant there, unlike the circumstances here, remained silent when his attorney moved to withdraw. Although that factual distinction exists, defendant's argument misses the larger point that a trial court cannot realistically be expected to rule on a different issue than the one before it. An attorney's motion to withdraw in a criminal case involves potentially overlapping, but analytically distinct, considerations from those implicated by a defendant's motion for substitute counsel. The attorney's ability to withdraw may depend on various factors, including ethical considerations. For example, the Code of Professional Responsibility states that an attorney may request permission to withdraw from employment when his or her client "fails to keep an agreement or obligation to the lawyer as to expenses or fees," DR 2-110(C)(1)(f), or where a conflict of interest exists. *See* DR 5-101(A). However, a defendant's entitlement to substitute appointed counsel depends on the legitimacy of the defendant's complaints about counsel's representation. *Langley,* 314 Or at 257 ("[A] defendant has 'no right to have another court-appointed lawyer in the absence of a legitimate complaint concerning the one already appointed for him.'") (quoting *State v. Davidson,* 252 Or 617, 620, 451 P2d 481 (1969)). Because of those differences, principles of efficiency and fairness dictate that a defendant's approval of a motion to withdraw not be treated as if it were

the defendant's own motion for substitute counsel. The trial court was entitled to consider counsel's motion to withdraw on its own merits.

Moreover, here, immediately after denying counsel's motion to withdraw, the trial court asked defendant whether he wanted to proceed to trial that day. In so doing, the court afforded defendant an opportunity to voice any objections to continued representation by the same counsel. Defendant stated that he wanted to proceed. Under the circumstances, the trial court was not required *sua sponte* to inquire whether defendant intended to seek the appointment of substitute counsel.

██ In his second assignment of error, defendant argues that the trial court erred in including his 1980 conviction in the calculation of his criminal history score for sentencing purposes. Defendant contends that the state did not show that he was represented by counsel in that case or that, if unrepresented, he validly had waived the right to counsel. Specifically, he asserts that (1) the unavailability of a record of proceedings in the 1980 case required the state to produce some other evidence that he had an attorney in that case or that he validly had waived the right to counsel; and (2) the state failed to meet its burden because the testimony of the judge in that case was not sufficiently detailed to warrant the conclusion that the judge adequately informed him of his rights or warned him about the risks of self-representation.[1] Because, as we now explain, defendant's first argument is flawed, we need not reach his second argument.

██ A prior conviction that is constitutionally defective because the defendant was uncounseled cannot be used to enhance the sentence in a subsequent proceeding against the defendant. *Riggins*, 180 Or App at 533. When a defendant challenges the use of a prior uncounseled conviction, he must make a *prima facie* showing that he was not represented. *Id.*

---

[1] The state contends that this assignment of error is unreviewable. *See* ORS 137.079(5)(f) (providing that "issues relating to a defendant's criminal history shall not be reviewable on appeal"). The state is mistaken. ORS 137.079(5) applies only to issues concerning the *existence* of a defendant's prior convictions, not the propriety of considering such convictions in the calculation of the defendant's criminal history score. *State v. Torres*, 184 Or App 515, 522, 59 P3d 47 (2002).

The defendant meets that burden if the record either affirmatively demonstrates that he did not have counsel or is silent on that point. *Id.* at 531. If the defendant makes the required showing, the burden then shifts to the state to show either that the defendant was, in fact, represented or that he validly waived counsel. *Id.* at 528-29. Because courts are reluctant to find that fundamental constitutional rights have been waived, we will not presume waiver from a silent record. *State v. Meyrick*, 313 Or 125, 131-32, 831 P2d 666 (1992) (citing *State v. Grenvik*, 291 Or 99, 102, 628 P2d 1195 (1981)).

Defendant does not direct our attention to any evidence in the record that he was not represented by counsel in the 1980 case. Instead, he argues that he made the requisite *prima facie* showing that he was unrepresented by establishing that the record of proceedings in the 1980 case apparently was destroyed. He argues that, because it was unavailable, the record was *silent* as to whether he was represented by counsel in the 1980 case and, therefore, under *Grenvik*, we may not presume that he was represented.[2]

Defendant misperceives the nature of a "silent" record. In each of the cases in which we or the Supreme Court have held that the defendant made a *prima facie* showing from a silent record, a record of the prior proceeding existed but either made no reference to an attorney or contained documents on which spaces for the name of the defendant's attorney were left blank. *See, e.g., Grenvik*, 291 Or at 102; *Riggins*, 180 Or App at 532; *State v. Manfredonia*, 105 Or App 537, 539, 805 P2d 738 (1991). In other words, the record existed, but its silence on the subject of the defendant's representation constituted circumstantial evidence from which the court could infer that the defendant was unrepresented. *See Manfredonia*, 105 Or App at 540 (holding that "there is an inference from the existence of a blank for the name of defendant's lawyer and from the absence of any evidence to

---

[2] In *State v. Probst*, 192 Or App 337, 348-49, 85 P3d 313 (2004), we followed *Grenvik* even though we concluded that the United States Supreme Court's later decision in *Parke v. Raley*, 506 US 20, 31, 113 S Ct 517, 121 L Ed 2d 391 (1992), calls into question—at least for Sixth Amendment purposes—the ongoing vitality of the principle that a valid waiver of counsel will not be presumed from a silent record in a prior criminal case in which the defendant was convicted. Because of the ground on which we decide this case, *Probst* is not dispositive here.

the contrary that defendant was not represented by counsel").

■■■■ Where, as here, the record of proceedings in the prior case is unavailable, it is not silent in the relevant sense. *Cf. State v. Leis*, 58 Or App 403, 406, 648 P2d 1345, *rev den*, 293 Or 653 (1982) ("This is a 'silent record' only in that the full record was not brought before the trial court. Defendant failed to satisfy his initial burden of providing a basis from which to establish a violation of his constitutional rights in the prior proceeding."). A defendant cannot satisfy his or her burden of production merely by asserting that the state has no evidence with which to meet its ultimate burden of persuasion. Instead, the defendant bears the burden of adducing *some* evidence that he or she was not represented. *Riggins*, 180 Or App at 533. Although the burden is light—merely one of production, not of persuasion—it cannot be satisfied merely by showing that no record of the prior proceeding exists.[3]

In this case, defendant failed to adduce any evidence that he was not represented by counsel in the 1980 case. Defendant himself did not testify to that effect; he testified only that he could not remember one way or the other. Nor did he attribute the nonexistence of the record of the proceedings in the 1980 case to any misconduct by the state. Speculation is all that remains, and it does not suffice. Because defendant did not make a *prima facie* showing that he was not represented by counsel in the 1980 case, the trial court did not err in including his conviction in that case in the calculation of his criminal history score for his current conviction.[4]

Affirmed.

---

[3] The absence of any record of the proceedings in the court of conviction is not necessarily fatal to a defendant's assertion that the prior conviction was uncounseled. In *Haynes v. Keeney*, 85 Or App 473, 475-76, 737 P2d 149 (1987), we addressed that issue in a petition for post-conviction relief. We stated:

"Petitioner did not introduce any record of the proceedings in the courts of the convictions. In fact, he could not have, because those records had been destroyed. Instead, he offered his own testimony to support his assertions. Petitioner's testimony alone, if believed, was sufficient to meet his burden."

[4] Our conclusion obviates the need to address the state's other arguments.