Submitted on record and briefs August 4, 2004, convictions vacated and remanded with instructions April 13, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## FEDERICO DEJESUS ESTACIO, JR.,
*Appellant.*

### 0108-36054; A118666

110 P3d 624

James N. Varner filed the brief for appellant. Federico Dejesus Estacio, Jr., filed the supplement brief *pro se*.

Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from multiple convictions for robbery, ORS 164.405 and ORS 164.395; and makes numerous assignments of error. We reject defendant's assignments without discussion except for what follows in this opinion. We review for errors of law, ORS 138.220, and remand for a hearing on whether different counsel should have been appointed to represent defendant at trial. *State v. Smith*, 190 Or App 576, 80 P3d 145 (2003), *rev allowed*, 337 Or 160 (2004).

The incidents resulting in defendant's arrest and trial occurred on August 29, 2001. After appointment of counsel and arraignment on October 18, 2001, in late February 2002, defendant's trial counsel requested a hearing to determine defendant's ability to aid and assist counsel, and in early March defendant requested an order for substitution of attorney.[1] The trial court ultimately found that defendant was able to aid and assist his counsel and denied his motion for substitution of counsel, finding no basis for his request.[2]

At the hearing on the motion for substitution of counsel, defendant explained that he believed that "[counsel's] not really looking for my best interest and she's not helping me as far as any legal work[.]" In response, the trial court pointed out that, because the evaluation had just been made about whether he was able to aid and assist in his own defense, it "would not judge [counsel's] attention to your case on the fact that up until last week she hadn't done much. Because, as I said, everything is kind of in limbo until a determination is made if you're able to aid and assist." After hearing from counsel, the trial court made its decision: "Mr. Estacio, your attorney has done everything and more than the court would expect at this point. She has been working very hard on your behalf. The motion is denied. No basis." Defendant responded:

> "Can I say something? It's just the fact that, you know, I've had her since August. I just feel like she aint'—you know, I

---

[1] A different judge than the judge presiding at defendant's trial considered both of those matters at separate hearings.

[2] The trial court had already scheduled defendant's trial to begin at the end of March.

just feel like she got a heavy case load. I know she's doing a lot of work. That's what I'm trying to say is maybe she's too busy."

After a further exchange between the trial court and defendant, defendant explained, "I just feel she ain't looking for my best interest." The court responded that "there is absolutely no basis and no reason you would lead me to believe that."

On March 29, 2002, the trial court heard pretrial motions before selecting a jury and beginning trial. Both the prosecutor and defendant's counsel stated that they were ready for trial. Defense counsel then told the court that defendant wished to address the court before the beginning of argument on the pretrial motions. Defendant stated to the court:

"First of all, I do not want to proceed—go along with my attorney * * * and I also do not want to negotiate a plea for a crime that I didn't commit. Over the past seven months she has been deceiving me to taking a plea bargain and she has not submitted any motion or legal help to me. Every time I would ask her to do something, I'm being ignored or denied, or I'm not, you know, and I don't know if she's prejudiced against my case or if she's doing it intentionally. It seems that she's more interested in my personal life rather than trying to help me with my case, or focusing on what's important. * * * With all due respect, Your Honor, I could fix a lot of time because I didn't know what was happening here and there, and I should be able to know at least what I'm dealing with and what I'm going up against, and I really think that [counsel] is not looking out for my best interests. I think her caseload is too [heavy], too much stuff in her hands, but not enough time, and it seems like she's doing everything at the last minute, and I feel like I'm being forced to go to trial today *and instead I file complaint to the Bar section, but I'm still waiting for their response.* Right now, I'm going to trial today, and so there's some time limit. *I just wish to be appointed to another counsel so that my constitutional rights will be protected.* * * * [S]ometimes there was trouble in communicating with her, whether my attorney's lying to me about everything we discussed, or what she puts in front of me."

(Emphasis added.)

The trial court asked if counsel had any statement that she wanted to make. She replied, "I guess, for the record, this is the first I knew that Mr. Estacio had filed a Bar complaint. He did ask for a substitution of counsel, and we had a hearing on that matter." The trial court reviewed the order from that hearing and asked defendant if "anything happened that's different between March 13 and today." Defendant asserted that he was given everything at the last minute and did not have time to consider matters before having to make a decision. Counsel then made an additional statement to the court:

> "*I wonder if Mr. Estacio's maintaining a Bar complaint against me puts me in actual conflict with his interests.* Having not seen any correspondence from the Bar, nor yet been in a position to respond to it, I don't know to what extent I would need to divulge client confidences or secrets in order to defend myself in a Bar complaint. I know that that could become an issue, but as yet, I've got no notice yet from the Bar. * * * [H]is statements that he doesn't understand what's going on and he doesn't understand what he's up against baffle me because we've been discussing * * * all the evidence that the state can bring against Mr. Estacio. We've been discussing that for months. And, Your Honor, I think that's sort of part and parcel of my concerns that Mr. Estacio can't assist and cooperate. I think it's clear that he distrusts me and I'm not really sure why that is."

(Emphasis added.)

After some discussion about other matters, the trial court returned to the issue of the Bar complaint:

> "JUDGE: Now, [counsel], getting back to your comments about the Bar complaint, you indicated that you were concerned that, because of what you've just learned today, * * * for you to defend yourself from the Bar complaint, you would need to divulge client confidences. I'm interested in the time frame. This has been estimated as a two-day trial and, if you had not even known of a Bar complaint, there would not be any defense or any divulging any client confidences that would occur during the course of this trial, would there?

> "DEFENSE [COUNSEL]: Right. I don't think so. I don't think so, Your Honor. I mean, I know—I'm aware—

I've never been in this situation before. This will be my first Bar complaint. But, I know that a lawyer may, if necessary, divulge confidences to the extent necessary to defend against such a thing, so I don't know what the allegations are so I don't know what I would or could divulge, and maybe it might come around in a month or more. It might happen before a certain thing. It might not. I just don't know if that might change—

"JUDGE: Well, if it would happen, say, a month from now, let's say, in connection with sentencing, then a motion for substitution may be appropriate at that time if a conflict comes up. Right?

"* * * * *

"JUDGE: But nothing has been put in front of me right now to indicate a real conflict right now, unless I'm missing something, based on what you've said. [Referring to counsel.]"

The trial court then inquired of defendant further and ultimately ruled

"that the defendant has not made a sufficient showing of any specific reason why a substitution of counsel should occur and I don't find any reason for criticism of [defense counsel] at this time based on what has been presented to me, and therefore, I do not believe it would be appropriate under Oregon law for me to grant this motion and therefore, I am denying—respectfully denying Mr. Estacio's motion for substitution of counsel."

Based on counsel's prior request, the court then conducted a competency hearing under ORS 161.360 and found that defendant was able to understand the nature of the proceedings, aid and assist counsel, and participate in his own defense. After a recess, the court made its rulings on other pretrial matters and prepared for *voir dire*. Counsel then spoke up: "I think that I need to move to withdraw * * * *based upon Mr. Estacio's Bar complaint. I think that puts us in conflict. That is a conflict of interest.* (Emphasis added.) The trial court asked for any authorities and for evidence of what specifically the Bar complaint entailed. Counsel referred the court generally to the Oregon State Bar Disciplinary Rules regarding when representation of the client is in conflict with a lawyer's personal interests. She returned to the possibility

that she might be required to disclose confidences or otherwise privileged material in response to the complaint and observed that "[t]his may have a chilling effect on his communication with me throughout the duration of the trial." She concluded, "I certainly, Your Honor, it's not going to affect my performance, that I am ready, willing, and able to try this case, and it won't affect me at all, the fact that he filed a Bar complaint."

The trial court denied the motion to withdraw, incorporating the statements made in its ruling on the substitution of counsel, and adding:

> "[W]hat I see is before the court in this question is an unspecified Bar complaint. There's no detail at all regarding it except the two words, Bar complaint, so there's no indication at all that any betrayal or revealing of client confidences or secrets would occur or could occur, the Oregon Code of Professional Responsibility is filled with many, many provisions, and with this unspecified 'Bar complaint,' it's impossible to know what we're talking about here. Counsel has indicated that she's ready, willing, and able to proceed with this case and that this will not affect her ability to try the case, and so, it would require a lot of speculation for me to say that, because something might or might not occur way down the line that that [*sic*] today could have a chilling effect or during the course of this trial could have a chilling effect, and I don't really see that anything new has been presented, nor has any further detail been given[.]"

■■■ Defendant argues on appeal that "under [Code of Professional Responsibility Disciplinary Rule (DR)] DR 5-101 * * * an actual conflict of interest existed due to the bar complaint disclosed by defendant, and, absent 'the consent of the lawyer's client', defendant's trial counsel was required to withdraw and the trial court was required to allow trial counsel's withdrawal."[3] DR 5-101 provides, in part:

> "(A)  Except with the consent of the lawyer's client after full disclosure,

---

[3] We refer to the rules in the Oregon Code of Professional Responsibility, not the Oregon Rules of Professional Conduct, which became effective on January 1, 2005.

"(1)    a lawyer shall not accept or continue employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial business, property, or personal interests. As used in this rule, 'a lawyer's own financial, business, property, or personal interests' does not include serving in a pro tem capacity on any court, board or other administrative body where such service is occasional or for a limited period of time and compensation therefor is incidental to the lawyer's other sources of income[.]"

The Supreme Court explained in *In re Knappenberger*, 337 Or 15, 27, 90 P3d 614 (2004):

"As with the other conflicts-of-interests rules, DR 5-101(A) is 'based upon the concern that, when a lawyer undertakes the representation of a client with interests differing from the interests of the lawyer * * *, the lawyer's judgment might become impaired or the lawyer's loyalty might become divided.' *In re Kluge*, 335 Or 326, 335, 66 P3d 492 (2003). To vindicate that concern and to prevent compromised representation, DR 5-101(A) requires a lawyer to look forward and to determine whether, in accepting or continuing representation, the lawyer's and the client's interests will conflict—in terms of DR-5 101(A), whether the lawyer's professional judgment 'will be or reasonably may be affected' by his or her own interests. That operative text expresses two degrees of certainty with respect to that determination. * * * That is DR 5-101(A) requires consent after full disclosure if, based on the facts in an individual case, (1) the exercise of the lawyer's professional judgment 'will be' affected by his or her * * * personal interests, regardless of whether the determination of an effect on the lawyer's professional judgment is reasonable; or (2) the exercise of the lawyer's professional judgment 'reasonably may be affected' by his or her * * * personal interests."

In some circumstances "it is possible for a lawyer to continue to exercise his or her professional judgment on behalf of the client without placing the quality of representation at risk." *Id.* at 28. However, this appeal is not about whether counsel violated DR 5-101(A), and our role as an error-correcting court in a criminal case is fundamentally different from an ethics adjudication.

*State v. Edwards*, 132 Or App 590, 593, 890 P2d 423 (1995), provides the framework for our analysis. In *Edwards*, we stated:

> "The right to substitute court appointed counsel is not absolute, and we review the trial court's decision for abuse of discretion. *State v. Langley*, 314 Or 247, 258, 839 P2d 692 (1992) [*adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993)]; *State v. Heaps*, 87 Or App 489, 742 P2d 1188 (1987). The exercise of that discretion requires a balancing of a defendant's right to effective counsel and the need for an orderly and efficient judicial process, *State v. Wilson*, 69 Or App 569, 572, 687 P2d 800 [1984], *rev den*, 298 Or 553 (1985), but
>
>> " 'a defendant has "no right to have another court-appointed lawyer in the absence of a legitimate complaint concerning the one already appointed for him." *State v. Langley, supra*, 314 Or at 257 (quoting *State v. Davidson*, 252 Or 617, 620, 451 P2d 481 (1969)).'
>
> "A request for substitution of counsel, therefore, requires a factual determination of whether a defendant has presented a 'legitimate complaint.' A 'legitimate complaint' is one 'based on an abridgement of a criminal defendant's constitutional right to counsel.' *State v. Langley, supra*, 314 Or at 258."

Applying the above principles, we conclude that it was an abuse of discretion to deny defendant's requests without making a full inquiry once the trial court was informed that defendant alleged that counsel had deceived and lied to him and that, as a result, defendant had filed an ethics complaint against counsel. At a minimum, the trial court should have made an affirmative inquiry of defendant concerning those allegations and the factual basis for them in order to ensure that defendant could be provided assistance of counsel in the upcoming trial that met the requirements of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. To fulfill its obligation, the trial court was required to determine if defendant's complaints were legitimate and, if legitimate, whether they would interfere with effective assistance of counsel.[4] The

---

[4] As we recently noted in *State v. Crain*, 192 Or App 328, 333, 84 P3d 1092, *rev den*, 337 Or 565 (2004), an attorney's motion to withdraw in a criminal case may

trial court's failure to make such an inquiry was error. *Cf. Edwards*, 132 Or App at 593 (holding that an intimate relationship between a defense investigator and a state witness did not constitute an ethical violation as to defense counsel).

■   The next step of the analysis is to determine if the court's error requires reversal. On that issue, our decision in *Smith* is also instructive. In that case, the trial court failed to inquire into the defendant's complaints concerning appointed counsel after he requested new counsel. 190 Or App at 578. We originally rejected the state's arguments that we should remand to the trial court for it to determine whether the defendant's attorney had adequately represented him. *State v. Smith*, 187 Or App 562, 564, 69 P3d 787 (2003). However, on reconsideration, we held that Article VII (Amended), section 3, of the Oregon Constitution[5] requires a showing of prejudice. *Smith*, 190 Or App at 579-80. We explained:

> "Because the trial court had an affirmative duty to inquire of defendant, the lack of an adequate record is its responsibility, not defendant's; defendant did all that he could do under the circumstances to make a record. The result of those considerations is that we cannot simply affirm the judgment.
>
> "That we cannot affirm the judgment, however, does not mean that defendant is automatically entitled to a new trial. If the trial court, after inquiring, could properly have refused to provide defendant a new attorney, defendant has not been prejudiced. If, on the other hand, the trial court should have agreed to defendant's request for a different attorney, defendant has been prejudiced because he did not receive counsel provided in accordance with the applicable requirements. To remand for a new trial without a showing of prejudice is, in effect, to presume prejudice in substance

---

involve "potentially overlapping, but analytically distinct, considerations from those implicated by a defendant's motion for substitute counsel." Here, as the discussion in the text makes clear, the two motions were significantly interrelated. We note, however, that under other circumstances it may be that consideration of counsel's motion to withdraw may require a different inquiry and analysis from the consideration of a defendant's motion for substitute counsel.

[5] Section 3 provides, in pertinent part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, not withstanding any error committed during the trial[.]"

from proof of error in the procedures designed to protect the substantive right. In *State v. Parker*, 317 Or 225, 233, 855 P2d 636 (1993), the Supreme Court expressly rejected a similar conclusion by this court. We conclude that the state is correct to the extent that defendant is not automatically entitled to a new trial as the result of the trial court's error. Rather, we vacate defendant's conviction and remand for the trial court to make the inquiry that it failed to make previously. If it determines that defendant should have received different counsel, it shall order a new trial; otherwise it shall reinstate defendant's conviction. This procedure is, admittedly, cumbersome, but it carries out the intention of the voters when they adopted section 3 by initiative in 1910. To the extent that our previous cases are inconsistent with this ruling, they are disavowed."

*Id.* at 580-81 (footnote omitted).[6] The same principles are applicable here.

Convictions vacated and remanded with instructions to inquire into the reasons for counsel's request to withdraw as defendant's attorney. If the trial court determines that defendant was entitled to substitute counsel or that counsel should have been permitted to withdraw, it shall order a new trial; otherwise it shall reinstate the previous judgment.

---

[6] Consistent with *Smith* is the Supreme Court's recent discussion in *Ryan v. Palmateer*, 338 Or 278, 297, 108 P3d 1127 (2005), where the court rejected the application to Oregon law of the structural error doctrine and reiterated the requirement that in direct criminal appeals we consider whether errors at trial require reversal under "harmless error" analysis.