Submitted on remand from the Oregon Supreme Court April 20, affirmed September 27, petition for review denied December 5, 2006 (342 Or 117)

## STATE OF OREGON,
*Respondent,*

*v.*

## FEDERICO DeJESUS ESTACIO, JR.,
*Appellant.*

## 0108-36054; A118666

144 P3d 1016

James N. Varner for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Schuman, Judge.

EDMONDS, P. J.

---

* Brewer, C. J., *vice* Wollheim, J.

## EDMONDS, P. J.

This case comes to us on remand from the Supreme Court for reconsideration in light of *State v. Smith*, 339 Or 515, 123 P3d 261 (2005). In our original opinion, *State v. Estacio*, 199 Or App 16, 110 P3d 624 (2005), we vacated defendant's convictions and remanded the case to the trial court with instructions to inquire into the reasons for defendant's appointed counsel's request to withdraw as defendant's attorney. On remand, we affirm defendant's convictions.

We quote the underlying facts as set out in our original opinion, with supplemental facts from the record where relevant:

"The incidents resulting in defendant's arrest and trial occurred on August 29, 2001. After appointment of counsel and arraignment on October 18, 2001, in late February 2002, defendant's trial counsel requested a hearing to determine defendant's ability to aid and assist counsel, and in early March defendant requested an order for substitution of attorney. The trial court ultimately found that defendant was able to aid and assist his counsel and denied his motion for substitution of counsel, finding no basis for his request.

"At the hearing on the motion for substitution of counsel, defendant explained that he believed that '[counsel's] not really looking for my best interest and she's not helping me as far as any legal work[.]' In response, the trial court pointed out that, because the evaluation had just been made about whether he was able to aid and assist in his own defense, it 'would not judge [counsel's] attention to your case on the fact that up until last week she hadn't done much. Because, as I said, everything is kind of in limbo until a determination is made if you're able to aid and assist.' After hearing from counsel, the trial court made its decision: 'Mr. Estacio, your attorney has done everything and more than the court would expect at this point. She has been working very hard on your behalf. The motion is denied. No basis.' Defendant responded:

" 'Can I say something? It's just the fact that, you know, I've had her since August. I just feel like she ain't—you know, I just feel like she got a heavy case

load. I know she's doing a lot of work. That's what I'm trying to say is maybe she's too busy.'

"After a further exchange between the trial court and defendant, defendant explained, 'I just feel she ain't looking for my best interest.' The court responded that 'there is absolutely no basis and no reason you would lead me to believe that.' "

*Estacio*, 199 Or App at 18-19 (footnotes omitted).

On March 29, 2002, the trial court heard pretrial motions before selecting a jury and beginning trial. Both the prosecutor and defendant's counsel stated that they were ready for trial. Defense counsel then told the court that defendant wished to address the court before the beginning of argument on the pretrial motions:

"JUDGE:  Okay, that's fine. Mr. Estacio, please stand up, and whatever you want to say. Go ahead.

"DEFENDANT:  Your Honor, before I would like to proceed on this trial, I would like to address this court and I would like also just to be on the record. First of all, I do not want to proceed—go along with my attorney * * * and I also do not want to negotiate a plea for a crime that I didn't commit. Over the past seven months she has been deceiving me to taking a plea bargain, and she has not submitted any motion or legal help to me. Every time I would ask her to do something, I'm being ignored or denied, or I'm not, you know, and I don't know if she's prejudiced against my case or if she's doing it intentionally. It seems that she's more interested in my personal life rather than trying to help me with my case, or focusing on what's important. I asked her if she talked to the witnesses or the victim again, or if she interviewed them again. There's got to be something that they said other than in the police reports, but yet I wasn't even allowed to get a statement from victims or witnesses. I know I asked for a full disclosure and suppress the evidence, but only got part of it, but not all of it. With all due respect, Your Honor, I could fix a lot of time because I didn't know what was happening here and there, and I should be able to know at least what I'm dealing with and what I'm going up against, and I really think that [counsel] is not looking out for my best interests. I think her caseload is too [heavy], too much stuff in her hands, but not enough time, and it seems like she's doing everything at the last minute,

and I feel like I'm being forced to go to trial today and instead I file complaint to the Bar section, but I'm still waiting for their response. Right now, I'm going to trial today, and so there's some time limit. I just wish to be appointed to another counsel so that my constitutional rights will be protected. * * * [S]ometimes there was trouble in communicating with her, whether my attorney's lying to me about everything we discussed, or what she puts in front of me. I know [counsel] had a special title and nobility to practice law. I believe she values her good reputation pretty well, but I also believe as counsel she had adequate time and resources and a good performance then, and, that's it, Your Honor.

"JUDGE: Alright. Okay, thank you for your statement, Mr. Estacio. I want to consider this whole matter. [Counsel], is there any statement you want to make[?]

"DEFENSE [COUNSEL]: I guess, for the record, this is the first I knew that Mr. Estacio had filed a Bar complaint. He did ask for a substitution of counsel and we had a hearing on that matter.

"* * * * *

"JUDGE: About how long ago[?] Maybe this is in the file. Well I see. I have it right here. It's the top order. On March 13th of this year, there was an entry, an order in the file, a defendant's motion for substitution of attorney is denied by Judge Frantz, and that order is dated March 29th, and so that order was done, let's see, 16 days ago. Let me—I want to just follow up a little bit with Mr. Estacio. Sir, has anything happened that's different between March 13 and today[?]

"[DEFENDANT]: Well, that's the reason why, Your Honor. It's just because, from the last minute, it just seems like I've been given everything from the last minute, all the discovery and I don't even have the time to really, you know, really look up into what I'm reading, and I just feel like I'm being, like I said, I'm being forced to doing something I don't really want to do right now.

"JUDGE: Okay, so I have this order, and I realize the situation that exists, as to the position you're in. Your client has made certain statements, but I do want to give everyone an opportunity to make statements on the record and, is there any other statement[?]

"DEFENSE [COUNSEL]: Yes, Your Honor. I wonder if Mr. Estacio's maintaining a Bar complaint against me puts me in actual conflict with his interests. Having not seen any correspondence from the Bar, nor yet been in a position to respond to it, I don't know to what extent I would need to divulge client confidences or secrets in order to defend myself in a Bar complaint. I know that that could become an issue, but as yet, I've got no notice yet from the Bar. And, Mr. Estacio, I met with him the first time on October 30th in jail and at that time he had had a chance to review the police reports, so we've discussed the police reports numerous times and his statements that he doesn't understand what's going on and he doesn't understand what he's up against baffle me because we've been discussing * * * all the evidence that the state can bring against Mr. Estacio. We've been discussing that for months. And, Your Honor, I think that's sort of part and parcel of my concerns that Mr. Estacio can't assist and cooperate. I think it's clear that he distrusts me and I'm not really sure why that is. I think that we might be in a different position with potentially different defenses or maybe some better mitigation evidence if I could have gotten Mr. Estacio's cooperation on a psychiatric evaluation that I tried to get him to participate in. And if he would let me do some research, which I really think needs to be done into some juvenile matters that the state clearly knows about and intends to use as an aggravating factor in any sentencing, but Mr. Estacio won't let me research that to diffuse it so at least so that I know what the state knows. I'm not able to gain his cooperation and that was the other matter that I wanted the court to—

"JUDGE: Yeah, and that's still a matter that I want to deal with.

"DEFENSE [COUNSEL]: Right.

"JUDGE: Okay, does the state want to be heard on this[?]

"STATE: As far as—I wasn't present at the last substitution of attorney, when he tried to fire [counsel], but my understanding is, I did speak to the D.A. who was there because he took quite a bit of log notes about different information that was offered up and what he told me is that [counsel] put a tremendous amount of time in this case, interviewed a large number of witnesses, had interviewed

witnesses that I hadn't talked to until this morning. After talking to [counsel], there's a witness who saw him commit the robberies. [She] says, I know, I've already spoken with this guy. [She] already interviewed him. So, in my personal experience, [she]'s put a lot more effort in this case than I typically see either side putting in a case of this nature, just due to the fact that it's difficult to track down and interview all these witnesses. If the standard was that someone's paranoid or doesn't trust their attorney, well, we wouldn't try a lot of cases here because a lot of criminals don't ever trust their attorneys because they don't trust the legal system. There's not much we can do to change that. I haven't heard anything specifically in regards to [counsel] why Mr. Estacio doesn't trust her, hasn't cooperated. Maybe he doesn't trust anybody. He's not willing to cooperate with anybody. I don't know, but there's been nothing specific as to [counsel]. She's from all accounts done quite a bit above and beyond in this case. He may not be—the facts have been discussed in pretty good detail in a settlement conference with Judge Maurer, so this isn't the first time he's heard these. He's on the record with the Judge. Well, I'm not sure it's on the record, but with the Judge, the photos, everything was discussed with him. There are no surprises coming up here today. I'm not sure why—maybe he's not interested in facing the music the day of trial, but it's a little late to raise these challenges.

"JUDGE: And the defendant's been in custody since the August date of—

"STATE: No. He left the state of Oregon. We had to extradite him back from Nevada. He's been in custody since October.

"DEFENSE [COUNSEL]: Yes. And, oh, Your Honor, just to—[State's attorney] reminded me. One of the witnesses who I interviewed was a better state's witness than defense witness. Consequently I didn't take any notes, didn't intend to call that person as a witness, so I didn't make a discoverable memo or anything of that nature. I just got the basic sense of what that person would say and rejected them as a witness.

"* * * * *

"JUDGE: Now, [counsel], getting back to your comments about the Bar complaint, you indicated that you were concerned that, because of what you've just learned

today, you heard the defendant say that this is the first time that you got knowledge that he says he's filed a Bar complaint with the Oregon State Bar against you, apparently relating to this case, and you indicated that, for you to defend yourself from the Bar complaint, you would need to divulge client confidences. I'm interested in the time frame. This has been estimated as a two-day trial and, if you had not even known of a Bar complaint, there would not be any defense or any divulging any client confidences that would occur during the course of this trial, would there[?]

"DEFENSE [COUNSEL]: Right. I don't think so. I don't think so, Your Honor. I mean, I know—I'm aware—I've never been in this situation before. This will be my first Bar complaint. But, I know that a lawyer may, if necessary, divulge confidences to the extent necessary to defend against such a thing, so I don't know what the allegations are so I don't know what I would or could divulge, and maybe it might come around in a month or more. It might happen before a certain thing. It might not. I just don't know if that might change—

"JUDGE: Well, if it would happen, say, a month from now, let's say, in connection with sentencing, then a motion for substitution may be appropriate at that time if a conflict comes up. Right[?]

"DEFENSE [COUNSEL]: Okay.

"JUDGE: But nothing has been put in front of me right now to indicate a real conflict right now, unless I'm missing something, based on what you've said. Okay. Alright, so I've heard what you've said. Now I've heard what the state said, and just getting back to you, Mr. Estacio, is there anything specific that you can—the state's attorney has indicated you haven't made any specific statements of anything that would indicate that [counsel] has not properly defended you. The state has made that argument. Is there anything specific that you can point to that's occurred between March 13th and today, March 29th[?]

"DEFENDANT: What I'm just saying, Your Honor, is just everything she's doing right now, she's just doing it at the last minute, and, you know, she's doing everything at the last minute where I'm, like, I'm getting kind of a little bit confused, you know, what am I going to do, or should I attack my defense as far as going into that, but—

"JUDGE: Okay, you were arrested in August. You went to Nevada, and then you came back here in October. My questions, now, I don't want to get into anything about what happened in connection with the charges brought against you. I don't want to get—I'm just talking about what happened afterwards. After you came back from Nevada, did [counsel] or other people from her office, the Metropolitan Public Defenders Office, talk to you about this case and go over matters, helping prepare a defense, after October[?]

"DEFENDANT: Yes. She just—well, basically, all the things that she was saying is basically the same thing that she'd been telling me. She hasn't been telling me anything else as far as, what are we going to do to defense [*sic*] our case as far as, just like I was saying about the victims or the witnesses, I was trying to get some statements, see what they have to say, but I haven't got any of those, and I filed for discovery and—

"JUDGE: Did you tell all that to Judge Frantz[?]

"DEFENDANT: No, I didn't mention that to her, Your Honor. I didn't mention it to her.

"JUDGE: But you did ask Judge Frantz for a new lawyer[?]

"DEFENDANT: For new lawyer, yes.

"JUDGE: Okay. And, was there a meeting with a Judge Jean Maurer in which she sat down to go over the settlement of the case[?]

"DEFENDANT: Yes. She went over with the settlement with the D.A.

"JUDGE: And did they go over all the evidence that the state was going to present, including all the exhibits and things[?]

"DEFENDANT: Yes, yes sir.

"JUDGE: So you saw all that[?]

"DEFENDANT: Yes.

"JUDGE: And, [state's attorney], how long [ago] was the settlement conference[?]

"STATE: Two weeks, maybe.

"DEFENDANT: That was last Wednesday, Your Honor.

"JUDGE: Okay, today is March 29th. Friday. And last Wednesday is March 20th. Is that when it was[?]

"DEFENSE [COUNSEL]: We had two of them, Your Honor.

"* * * * *

"JUDGE: And what kind of discovery occurred at those settlement conferences with Judge Maurer[?]

"DEFENSE [COUNSEL]: Your Honor, I'm not sure that Mr. Estacio got any other materials than a fresh perspective from Judge Maurer of the odds of conviction.

"JUDGE: Did the state describe its evidence[?]

"DEFENSE [COUNSEL]: Yes.

"JUDGE: And Mr. Estacio heard that[?]

"DEFENSE [COUNSEL]: Yes.

"JUDGE: Okay. Okay, Mr. Estacio, are you aware of all the legal motions and legal research materials that have been done on your case[?] Many matters have been presented to you and we're going to take them up shortly. There's a motion to sever pending. There's a motion dealing with mentioning mandatory sentence of Measure 11. There's a lot of legal briefs and legal work and materials prepared by your lawyer that have been given to me and I'm going to deal with shortly. Go ahead.

"DEFENDANT: See, a lot of the things that's being brought to me right now, I don't even know about. I don't even know that it's been—that we went on that case or we filed those motions or, I think that—

"JUDGE: Okay, well, are you aware, sir, that many of the complicated legal matters, such as dealing with a motion to sever, are matters that typically—legal research is done in a law office. Briefs are written. They take a lot of work. And then motions are filed to the judge, and these are normally not discussed in any detail at all with the client because they're legal matters that really are dealt with between the lawyers an[d] the judge, even though you might benefit if your lawyer, working for you, wins on one of those. Do you understand that's how it works[?]

"DEFENDANT:   Yes, sir.

"JUDGE:   You've been in court proceedings in the past, haven't you[?]

"DEFENDANT:   Yes.

"JUDGE:   So, you know how the system works, more or less[?]

"DEFENDANT:   Yes.

"JUDGE:   Based on what's presented to me at this time, I'm going to rule on the defendant's motion for substitution of attorney. The record should reflect that a motion was made before a criminal presiding judge, [Judge] Frantz, and this was made in Judge Frantz—on March 13th of this year, several weeks ago, ruled, denying the defendant's motion for substitution of attorney. I've just heard the defendant's oral motion. I've heard oral statements from the defendant. I've inquired of the defendant. I've [heard] statements from counsel for both sides, and it's my ruling that the defendant has not made a sufficient showing of any specific reason why a substitution of counsel should occur and I don't find any reason for criticism of [counsel] at this time based on what has been presented to me, and therefore, I do not believe it would be appropriate under Oregon law for me to grant this motion and therefore, I am denying—respectfully denying Mr. Estacio's motion for substitution of counsel."

Defendant then made a motion for a postponement of trial, stating that

"the reason why I don't want to proceed on this trial is because, first of all, like I said, I'm not ready. I don't know about my attorney. I told her, if you are ready, I told her then, but me personally, I'm not—that's the reason why I don't feel good about going to trial right now because I don't know, you know, if I could request a setover from right now until maybe a month and a half from now, then maybe that'll be a good time for me to go to trial because it's just—what I'm saying is, I'm going to go to trial for—it's a serious offense."

The trial court denied the motion, and, based on counsel's prior request, conducted a competency hearing under ORS 161.360.

■     During that hearing, the following occurred:

"JUDGE:    [I]s there a request for any further inquiries by the court on the aid and assist issues[?]

"DEFENSE [COUNSEL]:   Your Honor, I guess I would call the court's attention in Mr. Estacio's oral motion for a substitution of counsel, he indicated to the court that he believed that counsel was lying to him and so I guess the court might find that Mr. Estacio understands that the defense attorney's to defend him, but I think he believes that this defense attorney is working against his interests.

"JUDGE:    Okay, did you hear what she just said[?]

"DEFENDANT:    Yeah, I heard.

"JUDGE:    Is there anything you want to say about that[?]

"DEFENDANT:    I don't think that's true, Your Honor, because the only reason that I said that I think that I'm assuming that she's lying to me is because some of the things that I ain't never said about saying that she's talking with the—she's having conversations or trading information on what I've—all I'm just saying is that she become to think that later on—I would ask her and then she would tell me in another story.

"JUDGE:    Okay.

"DEFENDANT:    And, Your Honor, I don't know—I would like to say this. I mean, I don't want to—I don't mean to cut you off, but, you know, I just don't like—you know, I don't want to be forced to going to trial. If I don't want to go to trial, then, you know, I believe I don't have to because, you know, you're going to uphold my rights, and you know, I believe that's violating my constitutional rights.

"JUDGE:    Okay. I understand what you just said. I understand your position on that matter. Do you understand that the State of Oregon believes that you have violated the law and that the State of Oregon has put you into custody[?]

"DEFENDANT:    Yes, I believe that, sir. And I also believe that I have a right to a fair trial and a right to a defense counsel. And if I feel like my counsel—she's not doing anything productive for me, I also feel that, you know, I could try to ask for a substitute for another counsel that's

either—you can decide if you're going to deny it or not, and that's the reason why right now I don't know where I'm at because you just said that you denied my request for denying a substitute attorney."

The trial court found that defendant was able to understand the nature of the proceedings, was able to aid and assist counsel, and could participate in his own defense. After a recess, the court made its rulings on other pretrial matters and prepared for *voir dire*. Defense counsel then spoke up: "I think that I need to move to withdraw * * * based upon Mr. Estacio's Bar complaint. I think that puts us in conflict. That is a conflict of interest." The trial court asked for any authorities in support of counsel's motion and for evidence of what specifically the Bar complaint entailed. Counsel stated that she did not know what the complaint entailed, only that defendant had stated that he had filed it, and she referred the court generally to the Oregon State Bar disciplinary rules regarding when representation of the client is in conflict with a lawyer's personal interests. Counsel further alluded to the possibility that she might be required to disclose confidences or otherwise privileged material in response to the complaint and observed that "[t]his may have a chilling effect on his communication with me throughout the duration of the trial." She concluded, however, "I certainly, Your Honor, it's not going to affect my performance, that I am ready, willing, and able to try this case and it won't affect me at all, the fact that he filed a Bar complaint."

The trial court denied counsel's motion to withdraw as defendant's attorney, incorporating the statements made in its ruling on the substitution of counsel, and adding:

> "[W]hat I see is before the court in this question is an unspecified Bar complaint. There's no detail at all regarding it except the two words, Bar complaint, so there's no indication at all that any betrayal or revealing of client confidences or secrets would occur or could occur, the Oregon Code of Professional Responsibility is filled with many, many provisions, and with this unspecified 'Bar complaint,' it's impossible to know what we're talking about here. Counsel has indicated that she's ready, willing, and able to

proceed with this case and that this will not affect her ability to try the case, and so, it would require a lot of speculation for me to say that, because something might or might not occur way down the line that that [*sic*] today could have a chilling effect or during the course of this trial could have a chilling effect, and I don't really see that anything new has been presented, nor has any further detail been given[.]"

In light of our decision in *State v. Taylor*, 207 Or App 649, 142 P3d 1093 (2006), the trial court did not abuse its discretion when it denied defendant's motion to substitute new counsel. Defendant's unspecified Bar complaint failed to demonstrate an actual conflict of interest as distinguished from a theoretical one and therefore his complaint did not require the trial court to make further inquiry or to grant defendant's motion. *See Mickens v. Taylor*, 535 US 162, 172, 122 S Ct 1237, 152 L Ed 2d 291 (2002); *Wood v. Georgia*, 450 US 261, 271-74, 101 S Ct 1097, 67 L Ed 2d 220 (1981); *Smith*, 339 Or 515.

We have considered defendant's other assignments of error and reject them without a detailed discussion. In his first assignment of error, defendant asserts that the jury should have been advised that, if convicted, defendant was subject to a mandatory minimum sentence of 70 months in prison. Oregon and federal law is to the contrary. *State v. Daley*, 54 Or 514, 103 P 502, *on reh'g*, 104 P 1 (1909); *Shannon v. United States*, 512 US 573, 579, 114 S Ct 2419, 129 L Ed 2d 459 (1994). In his second assignment of error, defendant argues that under ORS 132.560(1)(b)(A) the trial court erred when it denied his motion to sever for trial robbery charges based on conduct committed on the same day, in the same manner, and in the same general location. We disagree. *See, e.g., State v. Miller*, 327 Or 622, 631-34, 969 P2d 1006 (1998) (rejecting the argument that joinder is permissible only when the evidence of one crime would be admissible under OEC 404(3) in a separate trial of the other charge). A discussion of defendant's other assignments would not benefit the bench or Bar.

Affirmed.