DEHOOG, P. J.
*871 Father appeals a supplemental judgment modifying his parenting time and awarding mother attorney fees. Father argues that the trial court erred in three ways: first, in denying his motion to continue the modification trial; second, in hearing mother's motion after having previously recused itself; and, third, in modifying father's parenting time in the manner that it did. Father further contends that, if we ultimately reverse the judgment at issue, we must also reverse the trial court's associated attorney fee award. Writing only to address father's second assignment of error, we conclude that the trial judge abused her discretion in hearing and deciding mother's motion to modify after having previously recused herself. We therefore reverse the supplemental judgment, including the award of attorney fees, and remand.[1]
The facts relevant to father's second assignment of error are procedural and undisputed. Mother and father married in 2010 and have one joint child, L. The parties separated in 2013, and, following dissolution proceedings in 2015, the trial court entered a judgment dissolving the parties' marriage and establishing custody and parenting time as to L. Through multiple motions to modify and related appeals, the court's various custody and parenting time rulings in this case have been the subject of ongoing proceedings since the parties separated in 2013;[2] those proceedings include a motion to modify parenting time that father filed after taking the present appeal.
Father's appeal arises from a June 15, 2016, hearing on a motion to modify parenting time filed by mother in January 2016. However, because, on March 7, 2016, after ruling on mother's separate but related immediate *94 danger motion, the trial judge made certain statements that bear on this appeal, we include those statements in our discussion. *872 Specifically, at the conclusion of the March 7 hearing, upon recusing herself, sua sponte , from all further proceedings in the case, the trial judge gave the following explanation:
"I'm going to recuse myself from hearing the modification. I don't believe anything Father says. He is not credible to me. He lied under oath. He has demonstrated a disregard of Court orders.
"* * * * *
"I'm basically disregarding [father's testimony] because he has absolutely no credibility with me at this point, which is why you folks need to get someone else to hear this modification because it would be inappropriate for me to hear it, because anything he says I'm not going to believe.
"* * * * *
"I am going to let Judge Rasmussen know that I can't hear any more of this because it would be unfair to Father at this point since I don't believe what he has to say."
On June 15, however, despite the earlier decision to recuse herself, the trial judge proceeded with the scheduled hearing on mother's motion to modify. By then, the trial court had granted a motion to withdraw filed by father's attorney on May 9, and had denied father's May 25 motion to continue the modification hearing, which father had filed due, in part, to the withdrawal of his attorney.[3] Father, who remained unrepresented as of June 15, did not appear at the modification hearing in person or by telephone. Mother testified in support of her proposed parenting-time provisions in the course of presenting a prima facie case for modification; the judge also relied on findings that she had made in prior hearings, which included extensive findings regarding father's credibility.
The trial judge provided the following rationale for proceeding with the hearing and effectively vacating the earlier decision to recuse herself:
*873 "Last time we were here-I think it was last time. It might have been the time before that. I think it was last time-it was in closing argument, and I indicated that I would not hear this case further, meaning the parenting-this case, had there been a contest, meaning had [father] shown up, because I don't believe anything [father] says.
And it wasn't because I didn't think that I could rule fairly. I think he's earned my lack of trust in him. I've seen him multiple times.
"And certainly in other counties where a family-a family judge is assigned to the family, it's probably not uncommon at all for that judge to make-have drawn conclusions about people over the course of the multiple times that they show up.
"I was trying to actually do [father] a courtesy of-because I am concerned sometimes that people think the judge just has it out to get them, and I wanted him to have the opportunity to present his case and testify without a judge already having decided that he's not trustworthy and let the judge hear that. But he chose not to come today. And it makes no sense to have another judge have to weigh[4 ] through all the considerable information in this case.
For instance, I don't have to read all the things that [mother] just put on the record because I was actually there. I actually wrote most of these opinions and I heard most of this testimony.
"So I just want to clarify that in case there's any question that I should not be hearing this in the first place. It's a prima *95 facie case. [Father] has chosen not to testify. And I have, of anyone in this courthouse, the greatest command of the very complicated series of events that has taken place. And as I said, in other counties, it would be just as a matter of course that the same judge would hear this."
Following the hearing, the trial court entered a supplemental judgment modifying the parenting plan in accordance with mother's requests. The court also awarded attorney fees in favor of mother. Father appeals.
*874 On appeal, father contends that the trial judge abused her discretion in proceeding to hear mother's motion after having concluded that she could not be fair to father. Mother's initial response is that father did not preserve this assignment of error and that any error by the court is not plain error. Like the trial judge, mother notes that, given father's absence at the modification hearing, the court was not called upon to assess his credibility and, as the judge observed, proceeding with the hearing promoted judicial efficiency. Accordingly, mother argues, the judge did not plainly err in hearing the matter herself. Mother additionally argues that, even if the court did plainly err, we should not exercise our discretion to correct the error. In making that argument, mother appears to contend that the trial judge's ultimate ruling was inevitable, given the credibility and other determinations that she had made at earlier hearings in which father had participated.
As to the merits of father's appeal, mother substantially relies on the trial judge's explanation for proceeding despite the earlier recusal, namely, that she would not be called upon to decide father's credibility anew; that the judge believed that she could be fair now that father was not present; and that she would be ruling largely on the basis of matters litigated and decided at earlier hearings. For the reasons that follow, we reject that reasoning and agree with father that the trial judge abused her discretion when she proceeded to hear mother's motion.
We begin by addressing preservation. Father acknowledges that, because he was neither personally present nor represented at the time of the modification hearing, he did not object to the trial judge's decision to hear mother's motion after she had recused herself. And, although father does not expressly concede that his second assignment of error is therefore unpreserved, he appears to contend that the trial court plainly erred and that we should review this assignment on that basis. Mother, on the other hand, views father's acknowledgment that he did not object to be a concession that this assignment is unpreserved and, as noted, argues that the trial court did not *875 plainly err. Mother further contends that, even if we conclude that the trial court plainly erred, we should not exercise our discretion to correct that error.
Whether a matter is preserved for appeal presents a question of law. Before deciding that question, however, we must consider whether father was required to preserve his second assignment of error under the circumstances of this case. That is, although we typically will not review unpreserved assignments of error unless we find plain error, that limitation does not apply if ordinary preservation principles do not apply. State v. Baskette , 254 Or. App. 751, 753, 295 P.3d 177 (2013) (citing Peeples v. Lampert , 345 Or. 209, 220, 191 P.3d 637 (2008) ("In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue.")).
Here, in arguing that we should exercise our discretion to correct the assigned error, father notes that he had no reason to believe that this judge would proceed to hear his case once she had expressly determined that she was required to recuse herself. We agree. Furthermore, in our view, that circumstance controls the preservation issue. In ruling that she would proceed to hear mother's modification request, the trial judge repeatedly observed that father had evidently chosen not to be present for the June 15 hearing. Mother quotes those observations in her preservation argument. Although mother's purpose in quoting those passages is not entirely clear, we reject any implication that, because father could have objected to that ruling if he had been present for the hearing, his absence precludes him *96 from asserting that, as a practical matter, he could not have raised the issue before the trial court. At the March 7 hearing, the judge had stated unequivocally that she would not hear the modification proceeding. Thus, even disregarding father's motion to continue and supporting declaration (in which he expressed his desire to personally attend the hearing and explained why he could not do so), we conclude that father had no practical ability to raise the issue he now assigns as error. That is, where a trial judge has repeatedly indicated, without qualification, that she will not hear a party's case because she cannot be fair to that party, we will not penalize the party for having not anticipated that the judge would *876 reverse herself on her own motion and without notice to that party. And, where, as here, a court pursues that course of action when a party is not present, ordinary preservation principles must, as a practical matter, give way. See Peeples , 345 Or. at 220, 191 P.3d 637 (noting that preservation is ultimately a practical consideration). Accordingly, father is not required to establish plain error for us to review his second assignment of error.
Turning to the merits of father's argument, we conclude that the trial judge abused her discretion in proceeding to hear father's case. Cf. Pinnell v. Palmateer , 200 Or. App. 303, 310, 114 P.3d 515 (2005), rev. den. , 340 Or. 483, 135 P.3d 318 (2006) (noting that we review the denial of a motion to recuse for an abuse of discretion).
In support of his argument, father relies on a provision of the Oregon Code of Judicial Conduct (CJC), Rule 3.10, which provides, in part:
"(A) A judge shall disqualify himself or herself in any proceeding in which a reasonable person would question the judge's impartiality, including but not limited to the following circumstances:
"(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer * * *."
Father observes that, "[a]ccording to the Supreme Court, the rule governs both actual bias and perceived bias." See In re Schenck , 318 Or. 402, 407, 870 P.2d 185, cert. den. , 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) (stating that, "not only the fact but also the appearance of impartiality are the very currency of judicial legitimacy"); see also State v. Langley , 363 Or. 482, 499-501, 424 P.3d 688 (2018) (considering whether trial judge was disqualified from presiding over defendant's trial due to actual or apparent bias). Here, echoing the language of Rule 3.10(A)(1), father argues that, whether or not the trial judge's rationale for recusing herself still applied once she no longer had to consider his testimony, that change in circumstance was ultimately inconsequential under the rule-that is, " 'a reasonable person' would still question the judge's ability to act impartially." Thus, father argues, the trial judge abused her discretion when she heard mother's motion to modify. We again agree with father.
*877 In reviewing the trial court's decision to proceed for abuse of discretion, the term " '[d]iscretion' refers to the authority of a trial court to choose among several legally correct outcomes." State v. Romero , 236 Or. App. 640, 643, 237 P.3d 894 (2010). "If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, the trial court did not abuse its discretion." State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000).
Here, the trial judge's decision to hear mother's modification motion after having recused herself did not produce a permissible, legally correct outcome; as a result, the judge abused her discretion. In reaching that conclusion, we are not suggesting that the trial judge was necessarily required to recuse herself in the first place. As the judge reasoned, trial judges often form opinions regarding the credibility of the parties appearing before the court; if those parties appear repeatedly over the life of a case, those assessments might well affect the court's subsequent, credibility-based determinations. Yet, we are aware of no provision of the judicial code or any other source of authority that would compel a court in those circumstances to recuse itself. Simply put, making credibility determinations is part of the judicial function, and the fact that a trial court comes to distrust a party's evidence over the *97 course of a hearing, trial, or case does not suggest that the court cannot fairly decide the matter-dispassionately deciding the weight to give competing evidence is the very essence of a fair adjudication. Thus, even though, under Rule 3.10 of the judicial code, a judge must recuse himself or herself if the judge has developed "a personal bias or prejudice concerning a party," it does not necessarily follow that a court cannot fairly hear a case to conclusion if, in the proper course of the proceedings, the court develops a negative opinion of one party's credibility.[5]
In this case, however, our focus is not on the trial judge's initial decision to recuse herself; rather, we consider *878 only whether the judge abused her discretion by effectively vacating that earlier decision. That does not mean that the words that the judge used to convey the decision to recuse herself have no bearing on our assessment. For two reasons, those words are both relevant and determinative. First, the judge not only said that she found father to be unworthy of belief, but also that she would no longer be able to hear anything that he had to say:
"I'm basically disregarding [father's testimony] because he has absolutely no credibility with me at this point, which is why you folks need to get someone else to hear this modification because it would be inappropriate for me to hear it, because anything he says I'm not going to believe .
"* * * * *
"I am going to let Judge Rasmussen know that I can't hear any more of this because it would be unfair to Father at this point since I don't believe what he has to say."
(Emphases added.) In recognizing that she had closed her mind to father's testimony, the trial judge effectively conveyed that she would be prejudging one side of a contested proceeding. As a result, the judge went beyond mere candidness regarding her assessment of father's credibility and acknowledged that any contested matter she heard involving father-or at least any matter involving father's testimony-would be a one-sided affair.
The second reason the trial judge's words are particularly significant is that they expressly conveyed that, as a result of the judge's prejudgment of anything father might say, she could not "hear any more of [the case] because it would be unfair to Father at this point * * *." (Emphasis added.) Thus, even if the trial court's initial assessment of father's credibility did not constitute "bias or prejudice" within the meaning of Rule 3.10 of the judicial code, the court's recognition that it could no longer be fair to father essentially acknowledged that bias or prejudice. And, as the trial judge recognized, at that point it was therefore appropriate for her to recuse herself under the rule, which, as noted, provides, in relevant part, that a "judge shall disqualify himself or herself in any proceeding in which * * *
*879 [t]he judge has a personal bias or prejudice concerning a party * * *." CJC, Rule 3.10(A)(1).
Moreover, as father emphasizes, the judge's subsequent explanation of her decision to hear the matter despite her earlier recusal did not ameliorate that concern. Although there is a logical appeal to the judge's reasoning-she was only biased against father's testimony, not father himself, therefore she could fairly hear his matters if he did not testify-that explanation does not wholly address the judicial code's concerns. That is, however logically sound that rationale may appear to the legally trained, it made too fine a distinction, given the rule's "reasonable person" standard. In our opinion, a reasonable person would view the judge's comments on March 7 as conveying that she had closed her mind to father's case, regardless of whether father testified further at the June 15 hearing. As a result, even if the judge had, in her view, regained the ability to fairly decide father's case, "a reasonable person * * * would [continue to] question the *98 judge's impartiality" toward father. CJC, Rule 3.10(A).
Because the trial judge's decision to proceed was based on her mistaken understanding that father's absence meant that she was not disqualified from hearing the modification proceeding, that decision constituted an abuse of discretion. As we did in Lamonts Apparel, Inc. v. SI-Lloyd Associates , 153 Or. App. 227, 231, 956 P.2d 1024 (1998) (discussing former recusal provision in the judicial code), we emphasize that we "are not enforcing judicial discipline but determining the correctness of a ruling that the trial court made in a case that is properly before us." Id. at 235, 956 P.2d 1024 (stating that "we are not usurping the Supreme Court's jurisdiction over judicial discipline"). And, as to that question, we conclude that, because the trial court misapprehended the significance of its March 7 statements, its decision to proceed with the June 15 hearing, premised, as it was, on that misapprehension, constituted an abuse of discretion. See State v. Redmond , 295 Or. App. 453, 455-56, 435 P.3d 764 (2018) (quoting State v. Larrance , 270 Or. App. 431, 440, 347 P.3d 830 (2015) (" 'Here, because the trial court intended to give a lawful sentence, but misapprehended the law and ultimately *880 decided the matter in reliance on that erroneous view of the law, the court abused its discretion.' ")). Accordingly, we reverse and remand the trial court's judgment, including the associated award of attorney fees.
Reversed and remanded.

Because of our resolution of the second assignment of error, which also addresses the attorney fee issue raised in father's fourth assignment of error, we do not address father's first and third assignments. We further note that a discussion of those issues would not benefit the parties because, since the filing of this appeal, a different judge has heard evidence and entered a new judgment modifying father's parenting time.

See, e.g. , Schwartz and Battini , 289 Or. App. 332, 410 P.3d 319 (2017).

Father's motion to continue also explained that he lived in Singapore and was medically unable to make the flight to Oregon at that time; father further contended that he would be unable to effectively represent himself at an evidentiary hearing if he were to appear telephonically. Mother objected to a continuance, and the court denied the motion.

Although no party appears to have sought to correct the transcript of the modification hearing, the context of the trial court's statements suggest that it actually said that it made "no sense to have another judge" wade through the evidence, rather than "weigh" through the evidence, as the transcript indicates.

Because the trial judge in this case concluded that her opinion of father's credibility required her to recuse herself from hearing the modification proceeding, we are not called upon to decide exactly when, if ever, such an opinion that develops in the course of a multi-proceeding case might constitute "personal bias or prejudice" that would preclude hearing any further proceedings in that case.