134 December 31, 2025 No. 1134

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ROBERT GODEAUZ SAVOY,
*Petitioner-Appellant,*

*v.*

Jamie MILLER,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
19CV19835; A176626

J. Burdette Pratt, Senior Judge.

Argued and submitted December 4, 2023.

Margaret Huntington argued the cause for appellant. Also on the reply brief was O'Connor Weber LLC. On the opening brief were Lindsey Burrows and O'Connor Weber LLC.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Chief Judge, and Powers, Judge.

LAGESEN, C. J.

Reversed and remanded for entry of judgment granting the petition.

**LAGESEN, C. J.**

This is a post-conviction case in which petitioner challenges his convictions in a bench trial for forcible rape and other sexual offenses on the ground that his trial lawyers' representation did not meet minimal constitutional standards. The charges against petitioner and his co-defendant Weekly, students at Western Oregon University, arose from sexual conduct with another student, H. Petitioner and Weekly were tried jointly, with Geiger and Mitchell representing petitioner and Lillegard representing Weekly. The trial was by-and-large a credibility contest, and the trial court's verdict rested largely on its credibility determinations.

At issue is whether petitioner's rights to the adequate assistance of counsel under Article I, section 11, of the Oregon Constitution, and the Sixth Amendment to the United States Constitution were violated when (1) Geiger and Mitchell did not seek to recuse the trial judge after the trial judge informed them that he did not trust Geiger and then, based on their view that the local jury pool would be inherently biased against petitioner because of his race, Geiger and Mitchell advised petitioner to waive his right to a jury trial before the same trial judge; and (2) Geiger failed to withdraw after the trial judge expressed his distrust of Geiger. We conclude that counsel's decision not to move to recuse the trial judge was not the product of reasonable professional skill and judgment because that decision was based on a fundamental misunderstanding of the law. We further conclude that counsel's deficient performance tended to affect the outcome of the proceeding because, on this record, there is more than a mere possibility that a different trial judge would have resolved the credibility contest underlying this dispute differently. Because petitioner is entitled to post-conviction relief on this ground, we do not address the other three grounds for relief raised by petitioner on appeal.

## I.  STANDARD OF REVIEW

"We review a post-conviction court's denial of relief for legal error, accepting the post-conviction court's implicit and explicit factual findings if there is evidence to support

them." *Monfore v. Persson*, 296 Or App 625, 632, 439 P3d 519 (2019).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

We state the relevant facts in a manner consistent with our standard of review. Before doing so, however, we clarify how we are accounting for the express credibility findings made by the post-conviction court.

This case was tried entirely on a paper record; no witness testified on the stand before the post-conviction court. Although the court thus had no demeanor evidence to consider, the court made express credibility findings based on the paper record before it. In particular, it found the declarations and deposition testimony from petitioner's trial lawyers to be credible. It found the testimony of Lillegard not credible, especially to the extent that Lillegard testified that Geiger and Mitchell "struggled" in presenting petitioner's case. The court found the declarations from petitioner and his mother "to be generally credible regarding their recollection of events," but noted that, in the event of a conflict between their testimony and that of Geiger and Mitchell, it credited Geiger and Mitchell. It found that petitioner and his mother were "not credible to the extent that they suggest that Petitioner was forced or coerced into waiving his right to a jury trial." It also found that petitioner was "not credible regarding his testimony [in one of his declarations] that he waived his right to a jury trial 'shortly before trial.'"

Ordinarily, we consider ourselves bound by a post-conviction court's credibility findings. *See Newmann v. Highberger*, 330 Or App 229, 234, 543 P3d 127, *rev den*, 372 Or 588 (2024). The standard rationale for deferring to the credibility findings of a trial-level tribunal is that, as between an appellate court and a trial court, the trial-level tribunal is best equipped to assess credibility because of its ability to observe the demeanor of witnesses during their testimony. *In re Schenck*, 318 Or 402, 420-21, 870 P2d 185, *cert den*, 513 US 871 (1994). Here, as noted, the post-conviction case was tried entirely on a paper record, so the post-conviction court's credibility findings necessarily did not hinge on demeanor observations. And, having reviewed the paper record on

which the post-conviction court necessarily relied, we reject as unsupported the court's finding that petitioner's testimony that he waived his jury trial right "shortly before trial" was not credible. No party disputes that petitioner waived his jury trial right on January 11, 2016, 19 days before the start of his trial. At the time, the charges against petitioner had been pending against him since March 2015. Given that timeframe, the record discloses no basis to discredit petitioner's perception that he waived jury shortly before trial; under the circumstances petitioner was in, his perception of time was objectively reasonable.

For similar reasons, we also reject the post-conviction court's findings that petitioner and his mother were not credible "to the extent" their declarations suggested that petitioner was coerced into waiving his jury trial right. Neither petitioner nor his mother asserted that petitioner was coerced into waiving his right to a jury trial. Rather, each simply explained the circumstances that petitioner confronted at the time his lawyers advised him to waive jury and explained the pressure they felt from the difficult position that his lawyers' advice put petitioner in, in view of the trial judge's express distrust of Geiger. We also reject the post-conviction court's determination that Lillegard was not credible in his opinion that Geiger and Mitchell struggled in presenting petitioner's case. Although the post-conviction court was not required to give weight to that opinion in its own review of the paper record of petitioner's criminal trial—the relevance of such opinion testimony is minimal at most—Lillegard's articulated perception of counsel's performance is not so at odds with the paper record to allow for a finding that his opinion on the matter is not credible.

We turn to the facts.

A.   *Underlying Criminal Proceedings*

As mentioned, petitioner and Weekly were charged with multiple sex offenses after both engaged in sexual acts with the victim, H, after a night of drinking in May 2014. Weekly filmed some of the conduct. Petitioner and his co-defendant are both Black; H is White. All three were students at Western Oregon University at the time.

The university held disciplinary proceedings in which the disciplinary panel determined that although H "did not fully and freely give her consent for the sexual encounters that took place," petitioner and Weekly did not "purposely have sexual relations with [H] without her consent." The state took a different view of the facts, and nearly a year after the incident, charged petitioner and Weekly in Polk County Circuit Court with first-degree rape by forcible compulsion and other sexual offenses.

Petitioner retained Geiger to represent him. Geiger brought on Mitchell to assist him, explaining to petitioner's family "that it would be better to have a woman assisting us with this because it was a rape case." Geiger also "like[s] to have a female attorney particularly cross-examine a female alleged rape victim." Lillegard represented Weekly.

Not too long before, Geiger had handled another rape case in Polk County Circuit Court. During that time, one of his dogs died from cancer. That made Geiger very emotional, so he moved to continue the trial date. The trial judge assigned to petitioner's case heard the motion and asked Geiger who had passed away. Geiger responded that "it was a family member," because, in his view, his dog was a family member. He did not disclose that the "family member" was a dog, because he "just had a sense if I told him what it was that he would become unglued." Based on Geiger's representations, the trial judge "moved the trial and everything was fine"—from Geiger's perspective, anyway.

In November 2015, the trial court held a telephone status conference in petitioner's case, at which Geiger and Mitchell requested a continuance of the trial date. In response, the trial judge disclosed that he "didn't know if he could trust anything that the defense presented to him."[1] The trial judge explained that his lack of trust stemmed from the fact that he had "recently discovered [Geiger] had been dishonest with the court and so he did not feel as though he could trust the representations of either defense counsel." Specifically, the

---

[1] The parties did not introduce a transcript or audio recording of the status conference into evidence in this post-conviction proceeding. Instead, Mitchell and Geiger described what was said during the conference in their declarations, which the post-conviction court credited. The quotations attributed to the participants of the conference are drawn from those declarations.

trial judge had become aware that when Geiger previously had moved for a continuance based on the "loss of the family member," the family member in question had been a dog. The judge "went onto say that this was a disingenuous representation" and that the judge "didn't feel as though he could trust anything Mr. Geiger asserted to the court." After further discussion, the trial court stated that "while he may still have trouble trusting [Geiger], that he would not extend that distrust to" Mitchell, and granted the continuance.

Notwithstanding the trial judge's stated lack of trust in half of the defense team, they did not move the trial judge to recuse himself. They did not do so because they were no longer in a position to peremptorily disqualify the trial judge and thought that they would have to demonstrate that the trial judge was actually biased to secure his removal from the case. Based on that understanding, they did not move to recuse him because they did not think they could prove actual bias and were concerned about angering the trial judge by filing the motion.

Geiger and Mitchell also did not discuss with petitioner whether Geiger should withdraw. Geiger did not consider withdrawing from petitioner's case because, in Geiger's words, "I was his lawyer and I was doing a good job and it wasn't affecting my ability to do a good job." Instead, Geiger and Mitchell structured their representation to account for the trial judge's lack of trust in Geiger. Although Geiger had been handling most of the matters that involved communication with the court, the two decided that Mitchell would be "the one communicating with [the] judge about various issues of the case" for the purpose of "letting things calm down."

About two months after the status conference and 19 days before trial, petitioner waived his right to a jury trial and elected a bench trial, signing a written waiver of his right to a jury trial. He did so because his lawyers told him that they thought petitioner's race would make it difficult for petitioner to obtain a fair jury trial in Polk County.

Petitioner then proceeded to trial before the same judge who distrusted Geiger. The transcript of petitioner's criminal trial reflects that, consistent with their approach of

minimizing Geiger's interactions with the trial judge, petitioner's lawyers waived opening statement, opting to rely on Lillegard's opening statement. Mitchell then handled the direct and cross-examination of all witnesses on behalf of petitioner; although Geiger had planned to handle objections during the state's direct examination of witnesses and handled the objections during the direct examination of the victim, the trial court prohibited that approach after it became aware that Geiger and Mitchell were planning to take that "tag-team" approach to the examination of witnesses. Geiger delivered the closing argument on behalf of petitioner. The court convicted petitioner of first-degree rape and many, but not all, of the other offenses with which he was charged. As noted, the court's verdict rested largely on its credibility findings. The court sentenced petitioner to 100 months' incarceration. Petitioner appealed, we affirmed without opinion, and the Supreme Court denied review. *State v. Savoy*, 289 Or App 377, 412 P3d 1206 (2017), *rev den*, 362 Or 861 (2018).

## B.　*Post-conviction Proceedings*

Following the completion of his direct criminal proceedings, petitioner initiated the instant post-conviction proceedings. He alleged his trial lawyers were inadequate and ineffective on four grounds: (1) by advising petitioner—speciously—that Polk County was a racist county and that he should waive his right to a jury trial for that reason; (2) by advising petitioner to waive his right to a jury trial and to proceed to trial before a trial judge who had stated that he may not be able to trust one of petitioner's trial lawyers; (3) by failing to withdraw from representing petitioner after the trial judge informed the lawyers that he distrusted Geiger and thought that Geiger had been dishonest; and (4) by not moving to have the trial judge recuse himself under Rule 3.10 of the Oregon Code of Judicial Conduct after the trial judge indicated that he distrusted Geiger. Petitioner also alleged that his trial and appellate lawyers were inadequate and ineffective by failing to raise certain due process challenges to his convictions and raised several stand-alone due process claims. The post-conviction court denied relief and petitioner appealed, assigning error to the post-conviction court's denial of relief on each of the four grounds identified above.

## III.   ANALYSIS

A.   *Legal Framework and Standard of Review*

To prevail on a claim of inadequate and ineffective assistance of counsel under Article I, section 11, a post-conviction petitioner must prove that trial counsel "failed to exercise reasonable professional skill and judgment," and that counsel's failure "had a tendency to affect" the result of the trial. *Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017). To satisfy the first prong, a petitioner must prove that counsel's decision "'reflects an absence of reasonable professional skill and judgment,'" which turns on "'the facts known to counsel at the time [counsel] made the decision.'" *Davis v. Kelly*, 303 Or App 253, 262, 461 P3d 1043 (2020) (quoting *Cartrette v. Nooth*, 384 Or App 834, 841, 395 P3d 627 (2017); brackets in *Davis*). To satisfy the second prong, a petitioner must show that counsel's inadequate performance tended to affect the outcome of the trial. *Green v. Franke*, 357 Or 301, 322, 350 P3d 188 (2015).

A functionally equivalent two-element standard governs claims of ineffective assistance of counsel under the Sixth Amendment. *Davis*, 303 Or App at 262. Under the federal standard, a petitioner must prove that "trial counsel's performance 'fell below an objective standard of reasonableness,'" and that "there was a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 262-63 (quoting *Strickland v. Washington*, 466 US 668, 694, 103 S Ct 2052, 80 L Ed 2d 674 (1984)).

We review the post-conviction court's judgment for legal error and accept the court's supported implicit and explicit factual findings. *Green*, 357 Or at 312.

B.   *Claim Based on Trial Counsel Failing to Move for the Trial Judge to Recuse Himself*

Petitioner argues that the post-conviction court erred in denying relief on his claim that trial counsel were inadequate and ineffective for not moving the trial judge to recuse himself after the trial judge expressed concern that

he could not trust Geiger's word. The post-conviction court denied relief on that claim, explaining:

"Petitioner did not prove that his trial attorneys failed to exercise reasonable professional skill and judgment in failing to recuse [the trial judge] from the case. [The trial judge] had already issued rulings in the case that prevented counsel from removing him without showing bias. They did not attempt to remove the judge for bias. Although they watched [the trial judge] carefully after the November 5 pretrial conference, the saw no evidence of prejudice or bias against them or Petitioner or his case. They made a reasonable strategic decision to not make a motion to recuse [the trial judge] because they saw no basis for making such a motion. Petitioner has not proven that all reasonable attorneys in that situation would have filed a motion to recuse [the trial judge].

"Petitioner again has failed to prove prejudice. Petitioner did not prove that the decision to not move to recuse [the trial judge] could have had a tendency to affect the outcome of the trial. Initially, there is no evidence that such a motion would have been granted. Also, as noted above, Petitioner did not prove that [the trial judge] was biased against his attorneys or him personally or that the incident between Mr. Geiger and [the trial judge] carried over into his trial in any way."

On appeal, petitioner argues that trial counsel's decision-making regarding recusal was based on an incorrect understanding of the law and, for that reason, did not reflect reasonable professional skill and judgment. Petitioner notes that recusal is required not only when a judge is actually biased against a party's attorney, but also in circumstances in which it reasonably appears that the judge is biased. Petitioner emphasizes that under Rule 3.10 of the Oregon Code of Judicial Conduct (CJC), "[a] judge must disqualify himself or herself in any proceeding *in which a reasonable person would question the judge's impartiality, including*" in circumstances when "[t]he judge has a personal bias or prejudice concerning * * * a party's lawyer." CJC 3.10(A)(1). Petitioner also cites to case law for the proposition that under the Fourteenth Amendment, and Article I, section 11, the "judge's duty to remain impartial requires that the judge be fair to both parties and avoid not only actual prejudice,

but also the appearance of prejudice by either language or conduct." *State v. Garza*, 125 Or App 385, 388, 865 P2d 463 (1993), *rev den*, 319 Or 81 (1994). Petitioner then points out that, in their depositions, his lawyers explained that they did not move to recuse the trial judge because they thought they could not prove actual bias. He contends that his lawyers' focus on their inability to prove actual bias demonstrates that they did not understand that they could move to recuse based on an appearance of bias.

We conclude that counsel's performance was deficient, and that the post-conviction court erred in concluding otherwise. "[T]he exercise of reasonable professional skill and judgment requires criminal defense counsel to research and analyze the law to the extent appropriate to the nature and complexity of the case." *Lizaragga-Regalado v. Premo*, 284 Or App 176, 186, 390 P3d 1079, *rev den*, 361 Or 803 (2017). Here, counsel's analysis of the recusal issue, and the post-conviction court's acceptance of their analysis as reasonable, reflect a fundamental misunderstanding of the law of recusal. Counsel explained that they did not seek to recuse the trial judge because they did not think they could demonstrate actual bias, and the post-conviction court credited that explanation and ruled that it reflected reasonable professional skill and judgment.

It does not; counsel's judgment was fundamentally at odds with established legal principles and, for that reason, was not reasonable. As quoted above, the plain terms of CJC 3.10 state unequivocally that a judge must remove themselves "in any proceeding in which a reasonable person would question the judge's impartiality" due to a range of factors, including a personal bias against a party's lawyer. As we have explained, CJC 3.10(A)(1) "governs both actual bias and perceived bias." *Matter of Schwartz & Battini*, 296 Or App 870, 876, 440 P3d 92 (2019). In other words, as the Supreme Court has put it, "not only the fact but also the appearance of impartiality are the very currency of judicial legitimacy." *Schenck*, 318 Or at 407; *see also State v. Langley*, 363 Or 452, 501, 424 P3d 688 (2018) (reiterating that the court has "long viewed the judiciary's duty to cultivate and maintain an image of propriety as a boundary that must not

be violated if the public is to have continued confidence in the workings of our courts"). The state and federal constitutions impose a similar standard to that contained in CJC 3.10. *See Garza*, 125 Or App at 388. Thus, a trial judge must recuse not only when the judge harbors an actual bias, the judge must recuse when "'the judge's conduct or words created such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interest of the court and the interests of the accused.'" *Id.* at 389 (quoting *Ungar v. Sarafite*, 376 US 575, 588, 84 S Ct 841, 11 L Ed 2d 921 (1964)).

Here, once the trial judge disclosed that he did not think he could trust anything the defense said, given his view that Geiger had been dishonest with him, a reasonable person would question the judge's impartiality in the case based on the judge's expressed personal bias against Geiger. That the judge's view of Geiger's honesty had a basis in fact—Geiger's past lack of candor—does not change the fact that the judge's distrust in Geiger would make a reasonable person question the judge's ability to remain impartial in matters in which Geiger was a participant. Nor is it changed by the fact that the judge concluded that he would not extend his distrust of Geiger to Mitchell. As long as Geiger remained on the case, a reasonable person would question the judge's impartiality due to the judge's representation that he "didn't feel as though he could trust anything Mr. Geiger asserted to the court."

In that regard, petitioner's case is not unlike the situation we addressed in *Matter of Schwartz & Battini*. In that case, we held that the trial court abused its discretion when it decided a mother's motion to modify parenting time after the judge had stated on the record in a prior hearing that she could no longer hear the parties' disputes because she had reached a point that she no longer believed anything that the father said. *Schwartz*, 296 Or App at 878. Although in deciding the motion to modify, the trial court explained that it thought it could hear the matter because, in its view, its previous statements had meant to convey that the court was only biased against father's testimony and not father himself, we explained that "however logically sound that explanation

may appear to the legally trained, it made too fine a distinction, given [CJC 3.10's] 'reasonable person' standard." *Id*. at 879. We reasoned that, having made the statements that she did, a reasonable person would continue to question the judge's impartiality toward father, notwithstanding the court's explanation. *Id*.

Here, as there, once the trial judge disclosed that he did not feel as if he could trust anything Geiger said to the court, a reasonable person would continue to question the judge's impartiality so long as Geiger remained on the case. Although, similar to the case in *Schwartz*, the judge's statement that he would not extend the same distrust to Mitchell might satisfy a legally trained person that the judge's impartiality should not be questioned in a case in which Geiger was not a litigant's only lawyer, it is not sufficient to dispel the questions of a reasonable person. A lawyer exercising reasonable professional skill and judgment in those circumstances would have recognized as much. Petitioners' lawyers' failure to do so constitutes a lack of reasonable professional skill and judgment.

The remaining question then is whether petitioner was prejudiced by his counsel's deficient performance. To establish prejudice based on counsel's failure to pursue a recusal motion, petitioner was required to demonstrate "actual bias or that [the trial judge's] recusal and the appointment of a different judge would have tended to affect the outcome" of the case, or "give rise to a reasonable probability that the outcome of the [case] would have been different." *McDonnell v. Premo*, 309 Or App 173, 187, 483 P3d 640 (2021), *rev den*, 369 Or 507 (2022).

We conclude that that standard is met. Setting aside the question of whether Geiger himself should have moved to withdraw based on the court's founded concerns about his candor, had counsel moved the trial judge to recuse himself based on his expressed distrust of half of petitioner's defense team, we are confident that the motion is one that necessarily would have been granted under the circumstances facing the trial judge here, that is, that an objectively reasonable judge would have recognized that "not only the fact but also

the appearance of impartiality are the very currency of judicial legitimacy" and would recuse. *Schenck*, 296 Or at 407.

We also conclude that the record demonstrates that the substitution of a different judge "would have tended to affect the outcome of the case." The "tendency to affect the outcome standard demands more than a mere possibility, but less than a probability." *Green*, 357 Or at 322; *Jaynes v. Cain*, 319 Or App 659, 670-71, 511 P3d 58 (2022). As mentioned, the record reflects that petitioner's criminal case was for the most part a credibility contest. Although there were differences in the evidence presented at the disciplinary proceeding and that introduced at trial, the outcome of the disciplinary proceeding indicates a likelihood that a different factfinder would view the competing narratives differently. Most significantly, there is more than a mere possibility that a different factfinder (particularly one not predisposed to distrust one of petitioner's lawyers) would resolve the credibility contest in a way that would lead the factfinder to reject the charge of first-degree rape based on forcible compulsion and resolve the case in a manner that aligned with the disciplinary proceedings. On that point, we note that at least some of the trial judge's stated reasons for finding petitioner not credible appear to be at odds with the record before the court, something that gives rise to "more than a mere possibility" that a different factfinder would assess credibility differently.[2]

_____

[2] For example, an issue at the trial was whether the victim had proposed a threesome to petitioner and the co-defendant. The trial court stated that, contrary to petitioner's testimony, it "found beyond a reasonable doubt that [the victim] never propositioned anybody for a threesome." In so finding, the court stated that the testimony about the threesome was not offered at the disciplinary hearing, something that appears to have informed its decision to discredit the contrary testimony by petitioner and other witnesses. However, the dean of students for the university testified that when she interviewed petitioner, petitioner said that the victim had been talking about threesomes at the bar.

On defendant's motion for reconsideration and new trial, the court explained that when it had said that petitioner's testimony about a threesome was not credible because it had not been presented at the disciplinary hearing, the court had actually meant that it was not credible because it was more specific from what the dean of students had described him as saying: "'The testimony from [the dean of students] is that what [petitioner] told her is that at the party [the victim] was talking about threesomes generally[.]" The court stated that it didn't think it had evidence on what petitioner said at the disciplinary hearing, apart from the testimony from the dean of students. Nonetheless, the court found petitioner's trial testimony inconsistent with the testimony from the dean of students because it

For these reasons, petitioner is entitled to post-conviction relief on the ground that his trial lawyers were inadequate and ineffective for not seeking the trial judge's recusal once the judge expressed his distrust of Geiger. Our conclusion that petitioner is entitled to relief on this ground obviates the need for us to address the balance of petitioner's grounds for relief, and we express no opinion as to whether the post-conviction court was correct to deny relief on those additional asserted grounds. As a result of the grant of relief, petitioner is entitled to a new trial. To the extent counsel's advice to waive jury because of their concerns about racial bias in the Polk County jury pool may have been inadequate to permit petitioner to make a fully informed decision as to whether to waive his right to a jury trial in his first trial, he will be entitled on retrial to make that decision again based on advice that adequately explores all considerations relevant to that decision, including the mechanisms available to secure petitioner's fundamental right to a jury trial free from racial bias, should other relevant factors weigh in favor of a jury trial over a bench trial.[3]

Reversed and remanded for entry of judgment granting the petition.

---

was "very specific" and, therefore, "different from what [petitioner] said to the WOU investigator." That inference of difference also appears to be unsupported by the record before the trial court; the dean of students was not asked about the level of specificity of petitioner's report, nor was the dean of students asked about the details of petitioner's testimony at the hearing. In all events, as pertinent to this case, there is more than a mere possibility that a different factfinder would find that petitioner's trial testimony was consistent with the testimony at the disciplinary hearing and not discredit it as inconsistent.

[3] *See* Anthony G. Amsterdam & Randy Hertz, *Trial Manual 10 for the Defense of Criminal Cases*, §§ 32.1-32.2, 1256-64 (10th ed 2025) (discussing the fundamental nature of the constitutional right to a jury trial and the considerations that must go into assessing whether a defendant should waive the right a jury trial and proceed to a bench trial, and the advice that should be provided); *see also Pena-Rodriguez v. Colorado*, 580 US 206, 228-29, 137 S Ct 855, 197 L Ed 2d 107 (2017) (discussing the role the Fourteenth Amendment has played in making progress toward the elimination of racial bias in the jury system and cataloguing the "standard and existing processes to prevent racial bias in jury deliberations"); Mikah H. Thompson, *Bias on Trial: Toward an Open Discussion of Racial Stereotypes in the Courtroom*, 2018 Mich St L Rev 1243, 1277-94 (2018) (discussing the use of *voir dire* and jury instructions to address racial bias in juries).